Argued and submitted March 17,
affirmed June 16, reconsideration denied July 22,
petition for review denied September 3, 1980 (289 Or 587)

STATE OF OREGON,
*Appellant, Cross-Respondent,*

*v.*

CLAUDE WESLEY KURTZ,
*Respondent, Cross-Appellant.*

(No. C 78-08-12943, CA 14006)

612 P2d 749

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for appellant, cross-respondent. With him on the briefs were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

David L. Slader, Portland, argued the cause and filed the brief for respondent, cross-appellant.

Before Schwab, Chief Judge, and Joseph, Warden and Warren, Judges.

JOSEPH, J.

**JOSEPH, J.**

In a prosecution for possession of the controlled substance cocaine, the state appeals from an order suppressing evidence obtained in a patdown and search of defendant. On cross-appeal, defendant assigns as error the denial of his motions to suppress evidence resulting from a search of his daypack and to suppress statements made after an allegedly unlawful detention. Defendant also assigns as error the overruling of his demurrer to the indictment for failure to state facts constituting an offense. We affirm in all respects.

In August, 1978, several police officers executed a warrant to search a residence in northeast Portland for cocaine. Defendant was discovered in the basement with two other persons, one of whom was trying to escape through a window, the other of whom was a person named in the warrant. On a lighted countertop in plain view was a jeweler's triple beam balance and a hypodermic syringe. An officer patted down defendant for weapons, felt a "large bulky object" in his back pocket and removed a wallet and spiral notebook from that pocket to see if there was a weapon concealed there. There was not. Defendant and the two others were taken upstairs, advised of their rights and asked for their names and addresses. After the warrant was read to them, a search of the premises ensued, during which defendant was detained. An officer returned to the basement and helped another officer look inside a daypack found near the end of the search, in which was discovered cocaine and pages from a notebook which matched the spiral notebook removed from defendant's pocket during the frisk. Only then was the pack identified as belonging to defendant. Fifteen minutes before the search warrant was executed, however, a man (later identified as defendant) had been observed by that officer to enter the residence carrying a dark-colored bag with a strap.

[619]

The state contends that it was error for the trial court to have granted defendant's motion to suppress the spiral notebook. The issue is whether in the course of the frisk the officer "reasonably suspected" that there was a weapon in defendant's pocket.[1] ORS 131.605(2) defines frisk as "an external patting of a person's outer clothing." ORS 131.625(2) provides:

> "If, in the course of the frisk, the peace officer feels an object which he reasonably suspects is a dangerous or deadly weapon, he may take such action as is reasonably necessary to take possession of the weapon."

"Reasonably suspects" is defined by ORS 131.605(4):

> " 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

In the pretrial hearing, the officer testified as follows:

> "Q. When you were conducting the patdown and you came upon the notebook, was that in the pocket with anything else?
> "A. I believe it was in the pocket with his wallet.
> "Q. And did that feel like a weapon to you?
> "A. No, it felt like a large bulky object. I couldn't determine whether it would have been a weapon concealed in there or not.
> "Q. So you removed it for the purpose of what?
> "A. Seeing if there was a weapon in there or not."

Construed together, ORS 131.605(4) and 131.625(2) indicate that in this context, reasonable suspicion means a reasonable belief that an object is a dangerous or deadly weapon. In this case, the officer did not hold a subjective belief that what he felt was a weapon, and the evidence shows no "specific articulable facts" (*State v. Valdez,* 277 Or 621, 626, 561 P2d 1006 (1977)) to support an objective belief that the

---

[1] Defendant does not question the validity of the frisk itself.

bulky object was a dangerous or deadly weapon.[2] The officer did testify that his general practice in frisking was to remove anything that felt like it might be a weapon or items, such as pieces of metal, that might be used to free oneself from handcuffs. If the state's position is that in the course of a patdown frisk an officer may remove anything which might conceal any sort of a weapon, that is not what the statute says. We affirm the trial court's conclusion that the permissible scope of the frisk was exceeded in this case. *See also, United States v. Reid,* 351 F Supp 714, 718 (EDNY 1972).

On cross-appeal, defendant asserts that officers executing a search warrant who have reason to think that guests are present with identifiable personal property should allow such guests to identify and claim property before the premises are searched. *See U.S. v. Poole,* 307 F Supp 1185, 1190 (ED La 1969) (duty of inquiry where search based on consent). The trial judge here found that the officers who found and searched the pack did not have actual knowledge that it belonged to defendant. That finding of fact is supported by the evidence, and we will not disturb it. *State v. Warner,* 284 Or 147, 158, 585 P2d 681 (1978). No authority compels us to adopt the rule that officers have a duty of inquiry in such circumstances. We find more persuasive the concerns voiced by the trial court judge in denying the motion:

"It just seems to me that it would not be practicable to have a rule that everything that belongs to somebody else in a house is therefore not subject to search when the Magistrate [has] authorized [a] search [of] the house. As a practical matter I don't see how we can impose an additional burden on law enforcement officers to have to take some further steps to identify what in the house belonged to the owner or what in the house belonged to the occupants

---

[2] *Cf. State v. Garza,* 32 Or App 643, 645, 574 P2d 1151, *rev den* 283 Or 1 (1978), *cert den* 439 US 989 (1978), where although the scope of the patdown search was not there at issue, the officer felt a "long, hard object which he suspected to be a weapon."

as opposed to what in the house may belong to the visitors, so I am going to deny the motion to suppress."

The issue remains to what extent a warrant to search a place permits search of articles found within the premises that belong to visitors, that is, persons not named in the search warrant who do not reside on the premises. In *Ybarra v. Illinois,* 444 US 85, 100 S Ct 338, 62 L Ed 2d 238, 245-46, (1979), the United States Supreme Court held that, absent probable cause, *persons* not named in a search warrant who happen to be present during execution of the warrant are not themselves subject to search. Defendant would extend that holding to embrace a person's "effects"[3] located elsewhere on the premises. Defendant relies on *United States v. Micheli,* 487 F2d 429 (1st Cir 1973), where search of a briefcase during execution of a search warrant was held valid, because it belonged to a co-owner of the premises. The court there nonetheless added, by way of *dicta:*

> "It should not be assumed that whatever is found on the premises described in the warrant necessarily falls within the proper scope of the search; rather, it is necessary to examine why a person's belongings happen to be on the premises. '[T]he Fourth Amendment protects people, not places,' *Katz v. United States,* 389 US 347, 352, 88 S Ct 507, 511, 19 L Ed 2d 576 (1967), and *the protective boundary established by requiring a search warrant should encompass those extensions of a person which he reasonably seeks to preserve as private, regardless of where he may be."* (Emphasis added.)

We decline to adopt the suggested test in determining whether a search warrant allows search of visitors'

---

[3] United States Constitution, Amendment IV:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

belongings.[4] If the search does not constitute a search of the person as proscribed under *Ybarra,* then the only issue is whether the scope of the search is "reasonably necessary" to find those items specified in the warrant. ORS 133.585.

The trial court here determined that the daypack was on the floor several feet from defendant when he was frisked. At the time of the discovery of the pack and its search, defendant was upstairs, the pack downstairs, and its ownership was not known to the officers at the time. The warrant authorized search of the premises for cocaine and identification, and those things could have been concealed in the daypack. The search of the daypack was therefore within the scope of the warrant and valid.

Defendant argues that his unlawful detention during the search vitiated the search of the pack and tainted statements made to the police. After being frisked, defendant was in custody, and he was not free to leave. The officers had probable cause to arrest defendant for frequenting a place where controlled substances are used, ORS 167.222, in light of the evidence of the small scale and syringe of the type used in drug operations, the person trying to escape through a window and information in the affidavit accompanying the warrant that there was frequent traffic to and from the house at all hours of the day and night. Defendant was advised of his rights before the search began. In short, the detention amounted to an arrest, which was not unlawful. Furthermore, the questions put to defendant about his name and address

[4] *Cf.* Judge Linde's comment, specially concurring in *State v. Green,* 285 Or 337, 358-59, 591 P2d 1362 (1979), regarding use of the formula of "legitimate expectations of privacy" in search and seizure cases:

"It is ironic to reverse the original extension in *Katz* in order to test people's expectations with respect to their 'persons, houses, papers, and effects' which the constitutional texts protect irrespective of expectation. If the emphasis is on the 'legitimacy' of one's expectation of privacy, the test begs the question. If it focuses on the expectation as a social fact, people's actual experience with official practice produces a self-fulfilling prophecy."

were plainly for routine identification and did not constitute interrogation. *State v. Hlady,* 43 Or App 921, 926, 607 P2d 733 (1979).

Finally, defendant asserts that the court should have sustained his demurrer to the indictment[5] on the theory that no valid schedule of controlled substances was in effect in Oregon in August, 1978, when defendant was charged. Defendant does not contend that the indictment does not contain all the statutory requirements of the offense. To support his theory, defendant must rely on facts extrinsic to those contained in the indictment. A demurrer cannot be sustained on that basis. *State v. Gates,* 31 Or App 353, 356, 570 P2d 670 (1977), *rev den* 281 Or 323 (1978).[6] The demurrer was properly overruled.

Affirmed.

---

[5] "The above-named defendant is accused by this information of the crime of possession of a controlled substance committed as follows:

"The said defendant on or about August 10, 1978, in the County of Multnomah, State of Oregon, did unlawfully and knowingly possess a controlled substance in schedule II, to-wit: Cocaine, contrary to the statutes in such cases made and provided, against the peace and dignity of the State of Oregon."

[6] The record shows that a motion to dismiss, which could have raised the issue, was first filed in this case four months after the arraignment, not within the requisite statutory period of 10 days. ORS 135.520. Moreover, the contention is without merit. *State v. Bishop,* 46 Or App 607, 612 P2d 744 (1980).