**UNITED STATES of America, Appellee,**

v.

**Robert Clark GRAY,
Defendant, Appellant.**

**No. 86–1955.**

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1987.

Decided March 25, 1987.

Charles W. Hodsdon II, Bangor, Me., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S.

Atty., Portland, Me., was on brief, for appellee.

Before BREYER, ALDRICH and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Following the denial of his pretrial motion to suppress, *see United States v. Gray*, 635 F.Supp. 572 (D.Me.1986) (*Gray I*), Robert Clark Gray was convicted of unlawful possession of cocaine in violation of 21 U.S.C. § 844(a). The evidence which he had sought, unsuccessfully, to exclude was used against him at trial and was essential to the prosecution's case. Gray now appeals, assigning as error the denial of his suppression motion. We affirm.

We restate the facts only to the extent necessary to put the question of suppression into proper perspective.

On November 2, 1985, an undercover informant made a "controlled buy" of cocaine from Beatrice Dostie at Dostie's home. A follow-on transaction was arranged. Thereafter, a federal/state drug enforcement task force secured both arrest and search warrants permitting, inter alia, Dostie's apprehension and a search of the buildings on the property for cocaine, money, and records relating to drug trafficking.

The trap snapped shut during the early morning hours of November 6, 1985. The second controlled buy was made at approximately 3:40 a.m. As soon as the sale had been completed, Dostie was arrested. The officers warned any occupants of the house to show themselves. One man appeared at a bedroom window, but no more. After several minutes had elapsed, the lawmen forced their way into the dwelling in order to execute the search warrant.

One of the first officers to enter was Sergeant Michael Harrington, a deputy sheriff assigned to the task force. He made his entrance through an outer room adjacent to the kitchen. In this entry room, he spied "defendant Gray and another man lying on the floor, between the couch, on one side of the room, and the stove, on the other." *Gray I*, 635 F.Supp.

at 574. Strangely enough, considering the hour, they were fully clothed. At that point, the identities of these individuals were not known to the searchers. While other officers attended to the prone pair—they were handcuffed, advised of their rights, taken to the attached garage, informed that they were *not* under arrest, and questioned—Sgt. Harrington began to execute the search warrant. He spotted a red nylon jacket which had been draped over the back of a chair in the outer room (a room where any person entering the house—occupant or not—might reasonably be expected to doff his or her coat). He began to search it. The district court found, supportably, that Harrington did not then know who owned the jacket. *Id.* at 574. In the coat's unfastened outside breast pocket, he discovered "a laminated miniature facsimile of a high school diploma issued to 'Robert Clark Gray,' a rolled-up dollar bill and a transparent baggie containing a white powder resembling cocaine." *Id.* The sergeant abruptly halted any further examination of the jacket.

Gray was then asked whether the red jacket belonged to him. His affirmative response precipitated his arrest and incarceration. Thereafter, an uninterrupted search of the jacket disclosed additional evidence of an incriminating nature.

The appellant argued to the district court that the arrest and search warrants were not supported by sufficient probable cause. He has not renewed that asseveration before us, but concedes, for purposes of this appeal, that the warrants were duly issued. He confines his case exclusively to the assertion that rummaging through the jacket was beyond the proper scope of the warrant-backed search.

Gray limits his challenge in yet another way. He does not contend the second, more extensive, search of the jacket was independently infirm. Rather, he posits a purely derivative argument: that the fruits of the later search were ineradicably tainted by the illegality of the original inspection of the jacket. Thus, the case on appeal necessarily turns on Harrington's right *vel non* to conduct his initial (limited)

search of the breast pocket of the jacket—an article of apparel which belonged to Gray but which was not being worn by him when it was discovered at Dostie's home.

In framing the issue, it is well to note that Gray was not under arrest at any time prior to the first search. The government has never sought to justify the sheriff's original inspection of the jacket as being incident to a lawful arrest, *cf. United States v. Peep*, 490 F.2d 903 (8th Cir.1974), and we have accepted this concession. The question to be resolved boils down to whether Gray's expectation of privacy in a personal effect not on his person or in his physical possession was sufficiently exalted so as to require the exclusion of evidence found and seized pursuant to a valid warrant for the search of the premises.

■ As a general proposition, any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant. *United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–2171, 72 L.Ed.2d 572 (1982); *United States v. Eschweiler*, 745 F.2d 435, 439 (7th Cir.1984); *United States v. Johnson*, 475 F.2d 977, 979 n. 4 (D.C.Cir.1973). Certainly, a windbreaker is a plausible repository for money or records. The appellant, to his credit, has not suggested the contrary. Nevertheless, special concerns may arise when visitors are present on the premises. *See United States v. Micheli*, 487 F.2d 429 (1st Cir. 1973). Appellant, citing *Micheli*, claims that the search of his jacket was improper.

■ The court below found—and, because the findings are not clearly erroneous, we must accept—several pertinent facts. For instance, when Harrington began to check over the windbreaker, neither he nor any other lawman knew whose it was. There is nothing in the record which compels a conclusion that the police should have been better informed. The district court noted that the jacket itself was bereft of any external indicia of ownership—there was no lettering, nametag, or the like to alert the searchers. Nor was the jacket part of a group of personal effects identified with a particular individual. At Harrington's first glance, the size and style of the garment were unremarkable; it could have been designed for a man or a woman or without regard to gender. As Judge Cyr concluded:

> Prior to the first search of defendant's jacket, the officers did not know (nor did the circumstances prompt them to inquire) who owned the jackets found in the entry room.

*Gray I*, 635 F.Supp. at 576. On the basis of the district court's finding in this regard, the appellant's reliance on *Micheli* appears mislaid. Fairly read, nothing in *Micheli* commands reversal in the circumstances at bar.

Although supererogatory in light of the foregoing, we are constrained to observe that *Micheli* would be of no succor to this defendant even if he were to persuade us that the officers, because of the jacket's proximity or kindred considerations, must have realized that it belonged to Gray. In *Micheli*, the court upheld the search of a briefcase, considered to be the defendant's personal effect, because it found a "relationship between the person and the place." 487 F.2d at 431. So, here. The defendant was not, say, a casual afternoon visitor to the premises. To the contrary, he was discovered in a private residence, outside of which a drug deal had just "gone down," at the unusual hour of 3:45 a.m. The officers had reason to think, based on overheard conversations, that Dostie was not operating freelance. Given the entire array of facts and the plausible inferences therefrom, the appellant could warrantably have been believed to be harboring contraband. The district court's alternative finding that "the circumstances of which the officers could have been aware at the time of the search strongly suggested that the defendant was no 'mere visitor or passerby,'" *Gray I*, 635 F.Supp. at 576, was abundantly justified. *Cf., e.g., United States v. Branch*, 545 F.2d 177 (D.C.Cir.1976); *United States v. Johnson, supra.* Even if the searchers believed that the jacket belonged to defendant, the circumstances then ex-

tant would unquestionably have served to bring the case within the *Micheli* rule.

We need go no further. The district court properly denied the motion to suppress and properly admitted the disputed evidence at the ensuing trial.

*Affirmed.*