STATE of Utah, Plaintiff and Appellee,

v.

Jodee JACKSON, Defendant and Appellant.

No. 930264–CA.

Court of Appeals of Utah.

April 19, 1994.

Cleve J. Hatch, Provo, for appellant.

C. Kay Bryson and Benjamin Davis, Provo, for appellee.

Before BENCH, JACKSON and ORME, JJ.

BENCH, Judge:

Defendant Jodee Jackson appeals her conviction for possession of a controlled substance, a class B misdemeanor, in violation of Utah Code Ann. § 58–37–8 (Supp.1993). We affirm.

## FACTS

On January 15, 1993, police officers executed a search warrant at a residence in Orem. The search warrant authorized the search of all persons living in the residence and all areas on the premises where controlled substances could be concealed.

Upon entering the home, the officers saw three females, including defendant, standing in the kitchen. A purse was lying on the kitchen counter. Pursuant to the warrant, an officer searched the purse. Upon searching the purse, the officer saw a plastic bag containing marijuana and then found items identifying defendant as the purse's owner. The officer found the marijuana before determining that the purse belonged to defendant and that defendant did not live at the residence.

Defendant was charged with possession of a controlled substance, a class B misdemeanor, in violation of Utah Code Ann. § 58–37–8 (Supp.1993). At trial, the court denied defendant's motion to suppress evidence obtained from the search of her purse. The court found that the "purse [was] within the residence, and that [it was] something that [was] subject to search just as much as anything else within the residence." This appeal followed.

## STANDARD OF REVIEW

"We review the factual findings underlying the denial of a motion to suppress evidence

under a 'clearly erroneous' standard, and review the trial court's conclusions of law based thereon for correctness." *State v. Brooks,* 849 P.2d 640, 643 (Utah App.1993) (citation omitted).

## ANALYSIS

 Defendant argues that the evidence obtained pursuant to the search of her purse is inadmissible and that her motion to suppress should have been granted. The dispositive issue, therefore, is whether the purse was within the scope of the search of the premises.[1]

 In the instant case, the search warrant authorized the search of all areas on the premises where controlled substances could be concealed. "[A]ny container situated within residential premises which [is] the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." *United States v. Gray,* 814 F.2d 49, 51 (1st Cir.1987); *see also State v. Hansen,* 732 P.2d 127, 131 (Utah 1987) ("lawful search of fixed premises generally extends to the entire area in which the contraband could reasonably be found"). However, searches of items known to belong to visitors, rather than to residents of the premises, may result in personal searches that are outside the scope of the premises search warrant. *United States v. Giwa,* 831 F.2d 538, 544 (5th Cir.1987). An individual's mere presence at a place named in a search warrant does not automatically subject the individual to a personal search. *United States v. Di Re,* 332 U.S. 581, 587, 68 S.Ct. 222, 225, 92 L.Ed. 210 (1948).

 We must therefore decide whether the search of the purse found on the kitchen counter was a personal search of defendant. In *United States v. Teller,* 397 F.2d 494 (7th Cir.), *cert. denied,* 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968), police officers executed a search warrant on Teller's house in order to search the premises and arrest her

husband. Teller was not home when the search was initiated, but entered the house while the search was still in progress and placed her purse on a bed. The police seized the purse and searched it where they discovered two vials of heroin. Teller was convicted of purchasing, selling, dispensing, and distributing heroin. Teller appealed, arguing that her purse was an extension of her person and therefore the police officers violated her Fourth Amendment rights when they searched her purse. The appellate court upheld the ruling of the trial court, stating that the purse retained Teller's personal immunity from personal search *only* to the extent that it was being worn by her. *Id.* at 497. The court concluded that since Teller was not wearing the purse, but instead had placed it on the bed, it "was merely another household item subject to the lawful execution of the search warrant. . . ." *Id.*

The basic doctrine developed in *Teller* has been applied in several other jurisdictions. In *United States v. Johnson,* 475 F.2d 977 (D.C.Cir.1973), the police, while executing a search warrant for an apartment, found Johnson, a nonresident, seated on a couch with her purse on the table in front of her. Despite the fact that the officers knew Johnson was a visitor, a search of the purse was upheld as being within the scope of the warrant. The court reasoned that the purse "was not being 'worn' by [defendant] and thus did not constitute an extension of her person so as to make the search one of her *person.*" *Id.* at 979; *see also United States v. Riccitelli,* 259 F.Supp. 665, 666 (D.Conn. 1966) (evidence seized from visitor's purse held admissible where visitor was not wearing purse, was not coerced into surrendering it, and did not declare ownership until after search); *Carman v. State,* 602 P.2d 1255, 1262 (Alaska 1979) (in upholding search of visitor's purse, court focused on fact that visitor's purse was not being worn by visitor, object of search could have been concealed

---

1. Defendant also argues that the search warrant does not sufficiently describe the residence to be searched because the city was not listed on the address in the warrant. Defendant failed to raise this argument at trial; therefore, we do not address it for first time on appeal. *See State v. Webb,* 790 P.2d 65, 77 (Utah App.1990) (matters not placed in issue at trial cannot be raised for first time on appeal).

within purse, and no one claimed ownership of purse).

In *Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909 (1988), the Pennsylvania Supreme Court addressed a similar issue involving the search, pursuant to a premises search warrant, of a visitor's jacket not being worn by the visitor at the time of the search. The court stated:

> Clearly, the police are not prohibited from searching a visitor's personal property (not on the person) located on the premises in which a search warrant is being executed when that property is part of the general content of the premises and is a plausible repository for the object of the search. Otherwise, it would be impossible for police to effectively search a premises where visitors are present because they would not know which items, clothing and containers could be searched and which could not be searched.

*Id.* 549 A.2d at 911. The court upheld the search of the visitor's jacket because it "was part of the general content of the room and was a plausible repository for the object" sought by the search warrant. *Id.* at 912.[2] We adopt the approach set out in *Teller, Johnson,* and *Reese.*

The dissent, however, urges us to adopt what it refers to as the "relationship approach." The dissent argues that the relationship approach is "clearly the more reasonable approach."[3] Neither the dissent, nor the authorities it cites, offer any guidance in the application of the relationship approach. Presumably, police officers serving a valid premises search warrant would be required to ascertain the ownership of each item or container in the premises. The officers would then be required to determine whether the owner of the item or container was merely a "transient visitor" or whether there was some greater connection to the premises. The dissent does not define the point at which a visitor becomes more than a transient visitor. The Pennsylvania Supreme Court appropriately criticized the relationship approach because it would be ineffective and unworkable to require officers serving a warrant

> to make the distinction between which articles of clothing and personal property belong to the resident and which belong to the visitor before beginning the search. It would not be reasonable to require police officers executing a warrant to ask individuals located on the premises whether they own various items of personal property nor, would it be reasonable to expect an appropriate response were they required to do so.

*Reese*, 549 A.2d at 911.[4] The court went on to discuss one of the fundamental practical

**2.** The dissent argues that because of the "way men and women in our society" carry their valuables, the majority approach will fall more harshly on women than men. However, the doctrine we adopt today, as well as the cases cited in support of that doctrine, apply with equal force to any container not in the visitor's possession, in which the object of the search might be concealed, whether the container is a purse, wallet, briefcase, shoulder bag, article of clothing, etc. *See, e.g., Commonwealth v. Reese*, 549 A.2d 909, 911 (Pa.1988) (search of visitor's jacket upheld under premises search warrant where object of search could have been concealed in jacket); *Commonwealth v. Snow*, 363 Mass. 778, 298 N.E.2d 804, 812 (1973) (search of customer's coat hanging on rack in barber shop upheld under valid premises search warrant where object of search could have been concealed within coat); *State v. Kurtz*, 46 Or.App. 617, 612 P.2d 749, 752 (1980) (upholding search of visitor's daypack not being worn by visitor where object of search could have been concealed within daypack).

**3.** The dissent represents that the "relationship approach" is followed by the majority of jurisdictions. The mere fact that a definitive number of jurisdictions follow a certain approach does not ipso facto grant any special status of correctness to that approach. In any event, it appears that the jurisdictions that have addressed the question are evenly split.

**4.** Similarly, in *State v. Nabarro*, 55 Haw. 583, 525 P.2d 573, 577 (1974), the Hawaii Supreme Court recognized the inherent problems associated with the dissent's approach.

> [P]olice cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a non-resident, and hence is not searchable. Because of this, without notice of some sort of

dangers of the relationship approach by stating that:

> visitors to the premises could frustrate the efforts of police by placing contraband among their unworn personal effects or by announcing ownership of various articles of clothing and containers in order to place those items beyond the scope of the warrant. We cannot sanction any rule that through fraud and gamesmanship erects barriers to the effective and legitimate execution of warrants.

*Id.* at 911. *See also State v. Kurtz,* 46 Or. App. 617, 612 P.2d 749, 751–52 (1980) (expressly rejecting relationship approach); *Carman,* 602 P.2d at 1262 ("we do not think that the police had a duty to solicit [who owned specific objects]").

Similarly, in *United States v. Micheli,* 487 F.2d 429, 432 (1st Cir.1973), Judge Campbell criticized the relationship approach as impractical.

> It may make necessary a lengthy inquiry into the police officer's subjective knowledge at the time of the search. Since the nature and quantum of "relationship" cannot readily be defined, officers and courts may be bedevilled with uncertainty in a field where certainty is especially desirable. The "test["] may dissolve into a protracted hunt for guidelines so faint as to be unrecognizable. And it invites a host of other niceties: such as whether the police knew or should have known that the [item or container] had recently been brought on the premises by someone; how near the bag must be to its owner before the police need inquire to its owner before the police need inquire into the latter's "relationship" to the premises; and other refinements which I think society has no vital stake in pursuing.

*Id.* at 434 (Campbell, J., concurring).

Under the relationship approach espoused by the dissent, an astute drug dealer could

---

the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to search under a warrant are part of those premises for the purpose of executing the warrant.

*Id.* 525 P.2d at 576–77. The court went on to hold inadmissible evidence that was seized in the search of a visitor's purse because the purse was

presumably keep a stable of transient visitors who, in the event of a search, will merely proclaim their status and then declare ownership in the contraband, thus placing the objects of the warrant beyond the scope of the search. In view of the authorities cited, and the practical problems of application, we reject the relationship approach as being unreasonable and unworkable.

In the present case, the officers did not know that defendant was a nonresident; nor did they know who owned the purse when it was searched. Because the purse was not in defendant's physical possession when it was searched, and because the purse could have contained items sought in the search warrant, the purse fell within the scope of the premises search warrant. Therefore, defendant's purse was subject to search as much as anything else within the residence.

## CONCLUSION

The trial court did not err in denying defendant's motion to suppress evidence obtained from the search of her purse. We therefore affirm.

JACKSON, J., concur.

ORME, Judge (dissenting):

I disagree with the majority's insistence that a mere visitor's purse, when not in the visitor's actual possession, is subject to search where a warrant names particular premises and its residents but does not name the visitor. Its ruling is both contrary to reason and against the clear weight of precedent. The majority opinion primarily relies on a 1973 opinion from the District of Columbia Circuit Court of Appeals, which focused its analysis on whether or not a visitor's purse was in her physical possession. *United States v. Johnson,* 475 F.2d 977, 979 (D.C.Cir.1973).[1] Since the visitor was not

---

in the "immediate vicinity" of the visitor and the visitor picked up the purse, thus declaring ownership. *Id.* 577–78.

1. Aside from the single trial court opinion, the other cases cited by the majority fail to support its pronouncement that a visitor's purse is subject to search if it is out of her physical possession and is a plausible container of objects

"wearing" the purse, the court concluded that it was no longer an "extension of her person," and thus was within the scope of the warrant which authorized search of the premises but did not name the visitor. *Id.*

Significantly, the physical proximity test announced in *Johnson* has been criticized and rejected by the First, Fifth, and Eleventh Circuit Courts of Appeal. *See United States v. Young*, 909 F.2d 442, 444–45 (11th Cir.1990), *cert. denied*, — U.S. ——, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991); *United States v. Giwa*, 831 F.2d 538, 544–45 (5th Cir.1987); *United States v. Micheli*, 487 F.2d 429, 431 (1st Cir.1973). *See also* Wayne R. LaFave, *Search and Seizure*, § 4.10(b) at 318 (2d ed. 1987) (physical proximity approach "rightly criticized"). According to the courts rejecting the physical proximity test, "in determining whether a search of personal effects violates the scope of a 'premises' warrant, one must consider the relationship between the object, the person and the place being searched," rather than focusing exclusively on whether the object of the search is in the person's actual physical possession. *Young*, 909 F.2d at 445. *Accord United States v. Gray*, 814 F.2d 49, 51 (1st Cir.1987); *Giwa*, 831 F.2d at 544–45; *Micheli*, 487 F.2d at 431. In support of its analysis, the First Circuit noted that

> sought in the search warrant. The cited cases are either perplexingly mischaracterized by the majority, based on different facts than those present here, or unnecessarily broad in analysis. *See United States v. Teller*, 397 F.2d 494, 495–96 (7th Cir.), *cert. denied*, 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968) (concerned search of *resident's* purse rather than that of a mere visitor to the premises); *Carman v. State*, 602 P.2d 1255, 1262 (Alaska 1979) (court held that *defendant* had no reasonable expectation of privacy in visiting sister's purse); *Commonwealth v. Snow*, 298 N.E.2d 804, 806, 812 (Mass.1973) (upheld search of visitor's jacket where warrant authorized arrest of all persons present in public place); *State v. Kurtz*, 612 P.2d 749, 752 (Or.App. 1980) (upheld search of visitor's day pack found in basement following visitor's lawful arrest); *Commonwealth v. Reese*, 549 A.2d 909, 909–10 (Pa.1988) (search of visitor's jacket upheld where search warrant named visitor and described him as a "known drug user" and associate of premises' resident). *But see United States v. Riccitelli*, 259 F.Supp. 665, 666 (D.Conn.1966) (upheld search of visitor's purse given combination of

[i]t should not be assumed that whatever is found on the premises described in the warrant necessarily falls within the proper scope of the search; rather, it is necessary to examine why a person's belongings happen to be on the premises. '[T]he Fourth Amendment protects people, not places,' *Katz v. United States*, 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), and the protective boundary established by requiring a search warrant should encompass those extensions of a person which he reasonably seeks to preserve as private, regardless of where he may be.

*Micheli*, 487 F.2d at 432. Using the "relationship" formula, the "usual occupant of a building being searched would lose a privacy interest in his belongings located there; however, a transient visitor would retain his expectation of privacy, whether or not his belongings are being held by him or have been temporarily put down." *Young*, 909 F.2d at 445. *See Micheli*, 487 F.2d at 432 ("[a] visitor in a private home stands in a different position from a habitue of a 'shooting gallery'"); *United States v. Neet*, 504 F.Supp. 1220, 1227 (D.Colo.1981) (distinguishing the two "polar" cases of an occupant and a mere visitor).

While the Tenth Circuit Court of Appeals has apparently not ruled on the matter, other courts in the western states addressing the

> factors, including that purse was not in visitor's possession).
>
> The selectiveness of the majority's analysis is best exemplified by its lengthy quotation of *State v. Nabarro*, 525 P.2d 573 (Haw.1974). While *Nabarro* does comment on the competing policies involved in determining whether the scope of a search warrant directed at particular premises should include a visitor's purse, only one side of which the majority recites in its opinion, the *Nabarro* opinion actually goes on to hold that the search of the visitor's purse was "beyond the allowable scope of the warrant to search the room." *Id.* at 577.
>
> Other cases which, at first blush, appear to support the majority's opinion actually do not. *See United States v. Martinez–Zayas*, 857 F.2d 122, 133–34 n. 7 (3rd Cir.1988) (concerned search of *resident's* purse rather than visitor's); *People v. Coleman*, 436 Mich. 124, 461 N.W.2d 615, 617 (Mich.1990) (search of visitor's purse upheld where she "had a special relationship to the person named in the search warrant and to the home being searched").

issue have followed the majority "relationship" approach. *See Neet*, 504 F.Supp. at 1227–28 (rejecting physical proximity test, finding search of mere visitor's purse unreasonable); *People v. Lujan*, 174 Colo. 554, 484 P.2d 1238, 1242 (1971) (same); *State v. Bulgin*, 120 Idaho 878, 820 P.2d 1235, 1237 (App. 1991) (adopting "relationship" test, concluding that mere visitor's purse not subject to search); *State v. Lambert*, 238 Kan. 444, 710 P.2d 693, 697–98 (1985) (search of visitor's purse unreasonable even though not in physical possession). ·Even the District of Columbia Circuit itself has modified its physical proximity approach to some extent. *See United States v. Branch*, 545 F.2d 177, 182 (D.C.Cir.1976) (ruling that combination of factors, including fact that defendant was a mere visitor, made search of his bag unreasonable).

The "relationship" test is clearly the more reasonable approach for deciding what may be searched incident to a premises warrant, because it takes into account the particular facts of each case. *See, e.g., United States v. Gray*, 814 F.2d 49, 51 (1st Cir.1987) (upheld search of visitor's jacket where drug deal had just taken place); *Micheli*, 487 F.2d at 431–32 (search of briefcase upheld where defendant was co-owner of premises); *Bulgin*, 820 P.2d at 1237 (visitor's purse subject to search where visitor was overnight guest, was described in affidavit, and was suspected of drug use). Accordingly, the relationship test better preserves the rights of individuals unconnected with the suspected criminal activity, as described in the affidavit underlying the search warrant, while giving police the leeway necessary to effectively search the premises.[2]

In the case at hand, defendant was a mere visitor to the premises. Her purse was on the kitchen counter near which she was standing. She clearly had a reasonable expectation of privacy in the contents of her purse.[3] Neither she nor her personal belongings were within the scope of the search warrant, and therefore, absent special circumstances not found here,[4] the search clearly violated the Fourth Amendment. Accordingly, the trial court should have suppressed the evidence of the contents of defendant's purse. I would reverse.

**2.** The majority claims that adopting the "relationship" test would allow supposed "visitors" to thwart the purpose of a search warrant by simply claiming ownership of "the contraband." While the relationship test in reality avoids such absurd results due to its flexibility, the blanket approach embraced in the majority opinion truly "would facilitate the insulation of incriminating evidence from lawful searches through the simple act of stuffing it in one's purse or pockets" upon hearing the police arrive. *United States v. Young*, 909 F.2d 442, 445 (11th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991).

As for the majority's statement that the relationship approach is "unworkable" since it does not constitute an absolute rule, it need only be pointed out that Fourth Amendment analysis, which focuses on whether or not a particular search is reasonable, by its nature requires a fact-sensitive inquiry in many contexts. *See United States v. Micheli*, 487 F.2d 429, 432 (1st Cir.1973).

**3.** This case involves a purse—not a jacket, suitcase, golfbag, or cookie jar. Because of differ-

ences in the way men and women in our society have traditionally carried their valuables and private effects, the approach favored in the majority opinion, as a practical matter, falls more harshly on women. A woman's expectation of privacy in her purse is as great as a man's expectation of privacy in his wallet. The fact that a wallet fits easily into a pocket, while a purse may be of a size or shape requiring temporary placement off one's body for comfort's sake, should not dictate whether society will recognize the existence of a similar expectation of privacy in each such item.

**4.** Such circumstances include: where the individual consents to a search; where the item sought is in plain view, albeit on his or her person or in his or her possession; where the search is incident to a valid arrest; and where there is probable cause to search, coupled with exigent circumstances which excuse the usual requirement of a warrant. *State v. Lambert*, 710 P.2d 693, 698 (Kan.1985).