Argued and submitted September 25, 1995, reversed and remanded July 24, petition for review allowed October 8, 1996 (324 Or 305)

# STATE OF OREGON,
*Appellant,*

*v.*

# DAVID OTIS BLEVINS,
*Respondent.*

## (C94-02-31062; CA A85761)

920 P2d 1131

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Dan Maloney, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Armstrong, J., dissenting.

**WARREN, P. J.**

Defendant was charged with possession of a controlled substance, ORS 475.992(1). The state appeals a trial court order suppressing evidence and a judgment dismissing the charge. We reverse and remand.

We take the facts from the trial court's oral findings and the undisputed evidence at the suppression hearing. On February 15, 1994, around 4:45 a.m., Officer Rivera of the Gresham Police Department stopped a vehicle containing two men, two women and several children because none of the occupants was wearing a seatbelt. Rivera planned to cite the adults for the seat belt infraction.

During his contact with the people in the car, Rivera noticed that the two men were "fidgeting" and "nervous." They were reaching into their pockets, between the seats, between their legs and under the seats. Rivera repeatedly told them to keep their hands in front of them so that he could see them. Instead, the men ignored Rivera's instructions and continued their movements. The continued "furtive movements" and "nervous manner" concerned Rivera. He called for backup out of concern for his personal safety; Officer Boyd responded. Rivera told Boyd about his observations and asked him to do a quick pat down for weapons. Rivera then returned to talk with the driver, while Boyd walked up to the passenger side of the car. Defendant, a passenger, appeared very nervous, looking back and to the side. He continued to reach under the seat and between his legs. Rivera repeated his instructions that defendant keep his hands visible, but both men again ignored these instructions and continued their furtive movements.

Boyd asked defendant to get out of the car. Defendant continued to act very nervous, grinding his teeth, looking around and sweating. Boyd believed that defendant was under the influence of a controlled substance. He was concerned for his safety and therefore patted defendant down. He felt "a long cylindrical object" in one of defendant's jacket pockets, which he believed to be a hypodermic syringe. He asked defendant if the object was a syringe, but defendant at first did not respond. Boyd then repeated the question and

defendant admitted that it was a syringe. Boyd seized the syringe, which appeared to be empty. Having found a syringe in defendant's jacket pocket, Boyd remained concerned for his safety. In another pocket, he felt a cylindrical object, an inch or more in diameter and between one and two inches long. Defendant did not respond when Boyd asked what the object was, and Boyd seized the object because he was concerned that the object could contain a weapon such as a razor blade or a needle. The object was a clear plastic cylindrical container that contained what Boyd recognized as a controlled substance.

Defendant was charged with possession of a controlled substance, ORS 475.992(1). Before trial, he moved to suppress evidence of the contents of the container, arguing that Boyd lacked authority to ask him to step out of the vehicle or to submit to a frisk. He did not challenge the propriety of the traffic stop. Specifically, he argued that, in the absence of a reasonable suspicion that defendant had committed a crime, Boyd had no authority under either the stop and frisk statutes or any general officer safety rationale to require defendant to submit to a frisk. In response, the state disavowed any reliance on ORS 131.605 to ORS 131.625, the stop and frisk statutes.[1] Rather, it argued that the frisk was authorized under the officer safety doctrine, *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), and that the officer did not exceed the lawful limits of the frisk when he removed the container.

[1] During the defense's closing argument, the following colloquy took place:

"[DEFENSE]: * * * it's real clear on the statute provision of stop and frisk which is the basis for this is that the stop and frisk does not apply to people who've been pulled over for whatever period of time for traffic infractions.

"And the reason why is [ ] that the way the courts' have it analyzed is that you have the stopping of persons—which is ORS 131.615—if you cause a reasonable suspicion that the individual has committed a crime, that frisk and stop first must follow immediately afterwards under ORS 131.625. * * *

"[STATE]: Maybe I can shorten this up. [*State v.*] *Bates*[, 304 Or 519, 747 P2d 991 (1987),] is a traffic stop. I'm not claiming that this is a 131 stop-and-frisk. I never have. *Bates* is a traffic stop. We're dealing with the case law in *Bates* that allows reasonable searches for officer safety. So, you know, I'll concede that point if you want to move on."

Accordingly, that question is not before us on review and we express no opinion as to the correctness of that reasoning.

The trial court held that the pat down and the seizure of the syringe were lawful under the officer safety doctrine. However, it suppressed evidence of the contents of the container on the ground that its seizure exceeded the permissible scope of a frisk for weapons for officer safety. The trial court held that the removal of the container was too intrusive because the officer could not specifically articulate a connection between his safety concerns and the contents of the container:

"THE COURT: There's got to be [a] more * * * reasonable connection between what's articulated and a real fear of—more specific fear for officer safety. I would say that this is not a specific articulable fear because the officer can specify what might be in the container of that size because the specification justifies going after all containers of almost any size that might ever be found on anybody's possession.

"* * * * *

"One is it's not a specific articulation if all it does is hypothesize what a container of that size might contain. There's nothing specific to this search. It's any container of that size.

"Secondly, at some point if you get sufficiently creative * * * then we have transcended the purpose of limiting a frisk to a minimal intrusion."

On appeal, the state assigns error to the trial court's granting of the motion to suppress. Defendant cross-assigns error to the trial court's decision that the frisk was lawful. On review, we are bound by the trial court's findings of fact where there is evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review the trial court's legal conclusions for errors of law. *Ehly*; ORS 138.220.

In *Bates*, the Oregon Supreme Court succinctly stated the officer safety doctrine:

"[W]e hold that Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that

the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." 304 Or at 524.

The pertinent inquiry, the Supreme Court said, is "whether the precautions taken [by the officer] were reasonable under the circumstances as they reasonably appeared at the time * * *." *Id*. at 525.

Defendant argues, however, under *State v. Lumpkin*, 129 Or App 601, 880 P2d 468 (1994), *adhered to* 133 Or App 265, 891 P2d 660, *rev den* 321 Or 138 (1995), that the officer's concern that the container "might" contain a weapon is insufficient to permit the officer to remove it lawfully.[2] Rather, defendant contends that the officer must reasonably believe that the container actually conceals a weapon. The state responds that *Lumpkin* supports its position. Specifically, the state argues that we should reach the same result as we did in *Lumpkin* and allow the introduction of evidence of the contents of the container because the officer in *Lumpkin* testified the same as Boyd did here: that his concern was that the object he felt in the defendant's front pocket "may" conceal a weapon.

During a lawful encounter with the defendant, the officer in *Lumpkin* became concerned that the defendant might be reaching for a weapon. Accordingly, the officer did a cursory pat down of the defendant's waist area and then patted the front of his jacket. In one jacket pocket the officer discovered a soft bulge and removed the object because he was concerned that it *may* conceal a weapon. The trial court's findings of fact stated:

" 'The officer was particularly concerned that the Defendant *may* possess a small weapon which was easily concealed, such as a razor blade or a fish hook, which can be hidden anywhere.' " 129 Or App at 611. (Emphasis supplied.)

---

[2] Boyd testified:

"THE COURT: So your concern for the vial was that there might be a weapon still within it?

"[BOYD]: Yes."

The item was a small nylon pouch in which the officer could see the edge of a clear plastic baggie. Because the officer recognized it as a common means of packaging controlled substances, he removed the clear plastic baggie and saw that it contained a white powdery residue. He then arrested the defendant for possession of a controlled substance. A further investigation yielded more controlled substances on the defendant's person and in his car. Before trial the defendant moved to suppress the seized evidence, the trial court denied the motion. On appeal, the defendant argued that the officer's removal of the baggie exceeded the permissible scope of a frisk under ORS 131.625(2).[3] We looked beyond the plain language of the statute and determined the permissible scope of a frisk under ORS 131.625(2) in light of the legislative purpose to codify, in part, the principles of *Terry v. Ohio*, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968). 129 Or App at 606. We affirmed, and held that an officer has the authority under ORS 131.625(2) to take whatever steps are reasonably necessary to take possession of an object that the officer feels during a frisk, if the officer has a reasonable suspicion, based on specific and articulable facts, that the object might contain a weapon. Upon review, the Supreme Court remanded for us to reconsider our decision in light of *State v. Hoskinson*, 320 Or 83, 879 P2d 180 (1994). We affirmed on remand; our holding illustrates our understanding that an officer's safety concern need only be that the object he or she feels during a pat down "might" contain a weapon:

> "[T]he officer here gave very clear reasons as to why he was concerned that the object that he felt might have contained a weapon: Despite his repeated instructions to defendant to keep his arms spread out on the trunk of the police car, defendant twice pulled his arms and hands in toward the midsection of his body and out of [the officer's] view— exactly where [the officer] felt the unidentified object. * * * [The officer's] belief was reasonable under the circumstances, and he was justified in removing the pouch." *Lumpkin*, 133 Or App at 270. (Emphasis supplied.)

---

[3] ORS 131.625(2) provides:

"If, in the course of the frisk, the peace officer feels an object which the peace officer reasonably suspects is a dangerous or deadly weapon, the peace officer may take such action as is reasonably necessary to take possession of the weapon."

■ For our analysis in *Lumpkin*, we expressly followed the same principle that directs our analysis here, under the officer safety doctrine: whether the safety precautions taken by the officer were reasonable under the circumstances as they reasonably appeared at the time. 129 Or App at 607. Accordingly, we see no reason why the same analysis should not be applied when an officer is engaged in the lawful frisk of a citizen under the officer safety doctrine.

The state argues that the trial court misapplied the officer safety doctrine in ruling on the seizure of the container. It contends that, during a pat down for officer safety, an officer is permitted to seize a container that the officer subjectively believes *could* contain a weapon, as long as that belief is objectively reasonable under the circumstances. Defendant responds that the officer must have a reasonable belief that the container *actually* conceals, rather than simply *could* conceal, a weapon in order to remove it lawfully.[4] We believe that the difference in their arguments is, in reality, semantic; our inquiry goes to whether the officer's subjective safety concerns and resulting actions are objectively reasonable under the circumstances. Therefore, whether the officer is concerned that the object actually contains a weapon, or that the object might contain a weapon, is not the real focus of the inquiry.

■ ■ To have a reasonable suspicion that the object "might" contain a weapon requires: (1) that the container had to have the physical capacity to conceal a weapon, and (2) that under the totality of the circumstances, there was a reasonable suspicion that it did contain a weapon. That is the case here. First, Boyd testified that the container was large enough to conceal a needle or a razor blade. Second, he testified that he had a generalized concern for weapons based on

---

[4] The dissent's reliance on *State v. Kurtz*, 46 Or App 617, 612 P2d 749, *rev den* 289 Or 588 (1980), is misplaced. We decided *Kurtz* on the ground that the officer did not hold a subjective belief, and that there was nothing specific about the contact to support an objective belief, that the object was a weapon. 46 Or App at 620-21. Rather, the officer in *Kurtz* testified that he removed the object *as a matter of general practice*, not because he was concerned that it was a weapon. *Id.* at 621. In this light, we rejected the proposition that an officer may remove anything that might conceal any sort of weapon because the statute requires that the officer has to be acting under the reasonable suspicion that what he or she feels is a weapon in order to remove it lawfully. *Id.*

his training and experience, and, further, that he had a specific reason to fear that this defendant possessed weapons and posed a danger to him. Boyd testified that, based on his training and experience, persons encountered in traffic stops use small items, such as razor blades or needles, as weapons. In addition, he testified that, in previous pat downs, he had found such items in containers. When Boyd approached the car defendant appeared nervous, looking back and to the side. He testified that defendant refused to comply with repeated express instructions to keep his hands in view. Rather, defendant continued to reach between his legs. After getting out of the car, defendant continued to act very nervous, grinding his teeth, looking around and sweating. Boyd stated that he believed that defendant was under the influence of a controlled substance. Finally, Boyd testified that during the pat down he found a syringe on defendant and that it was his experience that when he found one syringe during a contact he usually found another. The trial court found that the officer subjectively believed, based on his training and experience, that the container might conceal a razor blade or needle.

■    Under the totality of the circumstances, including defendant's specific actions, Boyd's generalized concerns based on his training and experience, and Boyd's specific articulable concerns based on his discovery of the syringe, Boyd reasonably suspected that the object that he felt during the frisk was capable of and might actually contain a weapon. A reasonable suspicion that a container discovered during a pat down contains a weapon does not require certainty that it does. That would require clairvoyance and could not accommodate a reasonable belief that turned out to be wrong. What is involved is a belief that the object felt is capable of containing a weapon and that, based upon the circumstances of the encounter, there is a reasonable likelihood that it does. That is what the officer testified to here; no more is required. The trial court erred in suppressing the evidence.

In his cross-assignment of error, defendant argues that the frisk was unlawful. As we understand it, defendant argues that a stop for a traffic infraction does not give an officer the authority to conduct a frisk for safety purposes. Further, he argues that the state's concession that the stop and

frisk statute does not apply means that the state also concedes that the officer had no reasonable suspicion to believe that defendant committed a crime or that defendant was armed or dangerous. The state does not respond to defendant's cross-assignment.

■     Defendant was stopped for a traffic infraction. ORS 810.410, in effect at the time of the stop, provided, in part:

"(3)   A police officer:

"* * * * *

"(b)   May stop and detain a person for a traffic infraction for *the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation*." (Emphasis supplied.)

In addition, the officer safety doctrine permits officers to take reasonably necessary steps to ensure their safety during those traffic stops in which they have a reason to be concerned about their safety. *Bates*; *State v. Riley*, 240 Or 521, 402 P2d 741 (1965). As a result, we analyze defendant's cross-assignment of error by applying the same standard that we used in resolving the state's assignment of error and reject defendant's cross-assignment of error for the reasons stated above.

Reversed and remanded.

**ARMSTRONG, J.,** dissenting.

I agree with the majority's disposition of defendant's cross-assignment of error, because I agree that the frisk was lawful. I dissent, however, from the decision to reverse the order suppressing evidence of the contents of the container, because the majority applies the wrong test to determine the legality of the seizure of the container. The correct test requires suppression of that evidence, as the trial court held.

ORS 131.625 is the source of authority for a police officer to frisk for weapons a person whom the officer has stopped.[1] *See State v. Lumpkin*, 133 Or App 265, 269-70, 891

---

[1] The majority points out that the state disavowed any reliance on ORS 131.625 and argued, instead, that the frisk was justified by the officer safety doctrine. The majority concludes, however, that the same analysis used to determine whether a frisk conducted pursuant to ORS 131.625 is lawful should apply when an

P2d 660, *rev den* 321 Or 138 (1995). Subsection (2) provides that

"[i]f, in the course of [a] frisk, the peace officer feels an object which the peace officer reasonably suspects is a dangerous or deadly weapon, the peace officer may take such action as is reasonably necessary to take possession of the weapon."

In *Lumpkin,* we construed that provision to allow an officer to seize an object that is not itself a weapon,

"if the officer has a 'reasonable suspicion, based on specific and articulable facts,' that the object [felt during a frisk] *contains* a dangerous or deadly weapon."

*Id.* at 269-70. Thus, the test contains both an objective and subjective component. The officer must subjectively believe that the object seized contains a weapon, and that belief must be objectively reasonable in light of the circumstances, thus the term *reasonable* suspicion.[2]

The majority, at one point, correctly states the test as set out in *Lumpkin.* The majority states that, in order for the seizure of a container detected during a pat down to be lawful, the court must find "(1) that the container had to have the physical capacity to conceal a weapon, and (2) that under the totality of the circumstances, there was a reasonable suspicion that it did contain a weapon."

Unfortunately, however, the majority then restates the subjective component of the test to be whether the officer reasonably suspects that the object "he or she feels during a pat down 'might' contain a weapon." 142 Or App at 243. In so

---

officer frisks a person under the officer safety doctrine. 142 Or App at 244. I agree with that conclusion. In enacting ORS 131.625, the legislature established a policy about the permissible scope of a search of a person whom a police officer reasonably suspects is armed with a weapon. That policy controls our analysis in this case, because we are not free to establish a different policy about the permissible scope of those searches from that chosen by the legislature. Thus, the analysis in *Lumpkin* is applicable to this case even if the authority for the frisk did not come from ORS 131.625.

[2] This understanding of the term "reasonable suspicion" is reinforced by the statutory definition found in ORS 131.605(4):

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts * * *."

concluding, the majority seizes on the following language from *Lumpkin*:

> "[T]he officer here gave very clear reasons as to why he was concerned that the object that he felt might have contained a weapon[.]"

133 Or App at 270. That particular language, however, refers to the reasonableness of the officer's previously stated belief that the object he seized from the defendant contained a weapon. That is confirmed by the fact that the quoted language in *Lumpkin* is followed by the statement that "[Officer] Ludwig's belief was reasonable under the circumstances[.]" In concluding that the test for what the officer must believe is whether the object *might* contain a weapon, the majority demonstrates a basic confusion between the objective and subjective components of the test. Because the majority distorts the test, it reaches the wrong result in this case.

The state argued that an officer conducting a pat down for officer safety can seize any container that could contain a small weapon, such as a razor blade or a needle. The law requires, however, that the officer actually suspect that the particular container *does contain* such a weapon, not just that it *could contain* one. By collapsing the test to consider only whether the object was capable of containing a weapon, we would totally discount the subjective component of the test, which is that the officer must believe that it does.[3] We have consistently refused to make that change in the test.

In *State v. Kurtz*, 46 Or App 617, 621, 612 P2d 749, *rev den* 289 Or 588 (1980), we rejected the proposition that "an officer may remove anything that *might* conceal any sort of a weapon," noting that such an argument is contrary to the plain language of the statute. (Emphasis added.) In *Kurtz*, the officer felt a large, lumpy object in the defendant's pocket.

---

[3] This test is not unlike other tests concerning the lawfulness of an officer's actions. For example, to prolong a traffic stop to inquire about conduct that was not the basis for the stop, an officer must reasonably suspect that other criminal activity *has* occurred. The officer must actually suspect such activity to have occurred, and that suspicion must be objectively reasonable. *See, e.g., State v. Aguilar*, 139 Or App 175, 180-82, 912 P2d 379 (1996). It is not enough for the officer to believe that other criminal activity *might* have occurred, because that would always be possible and, as a consequence, the officer's authority to conduct such an inquiry would be unlimited.

The officer testified at the suppression hearing that he could not determine whether the object concealed a weapon, so he seized it to check. *Id.* at 620. We held that, because the officer did not believe that the object he felt was a weapon, he could not seize the object. *Id.* at 620-21.

The majority claims that my reliance on *Kurtz* is misplaced because the officer in *Kurtz* held only a belief that the object that he seized was capable of containing a weapon, not that it did contain one. But that is *precisely* the same set of facts that we have in this case. The officer testified that, based on his *general* training and experience, an object such as the one seized from defendant *could* contain a weapon, so he seized it to check. He never once stated a subjective belief that it did contain a weapon. For that reason, this case is indistinguishable from *Kurtz.*[4]

The danger of adopting the alternative test stated by the majority, a test that we have consistently rejected, is aptly demonstrated by the officer's testimony in this case. During the suppression hearing, the court engaged the officer in the following colloquy:

"THE COURT: Can you think of any object you can find in anybody's pocket that can't at least contain either a needle or a razor blade?

"THE WITNESS: That can not?

"THE COURT: Yeah.

"THE WITNESS: [N]ot off the top of my head, no.

"THE COURT: So officer safety will justify removing any object found in the pat down?

"THE WITNESS: I wouldn't necessarily say any object, no.

---

[4] The majority also contends that if the test requires an officer to believe that an object seized during a pat down contains a weapon, such a test would "require clairvoyance and could not accommodate a reasonable belief that turned out to be wrong." 142 Or App at 245. That is not the case. The test requires only that an officer reasonably believe that the seized object contains a weapon, not that the officer be certain that it does. The seizure is valid even if it turns out that the object does not contain a weapon, as long as the officer reasonably believed that it did.

"THE COURT: Give me an example of one that doesn't contain a—I just—I mean I take seriously the officer [safety issue] . . . .

"THE WITNESS: I would venture to say that an object that was smaller than the length of a needle or smaller than the size of a razor blade.

"THE COURT: Okay. So a matchbook could contain a razor blade.

"THE WITNESS: Yes, it could.

"THE COURT: And I mean not the folding—hard wooden matchbook, folding matchbook—if you found a matchbook in somebody's pocket in the same place under those conditions, would you take out the matchbook too?

"THE WITNESS: Certainly.

"THE COURT: So once there's a pat down, anything the size of a razor blade or larger, unless it's flexible like paper and you can tell there's nothing in it, will come out of the pocket because it might contain a razor blade or a needle?

"THE WITNESS: It could very well, yes."

As the officer admitted during the suppression hearing, he could not think of any object that could not contain a weapon such as a needle or a razor blade. Clearly, the law does not permit an officer to search every object found on a person during a pat-down search.

In this case, the officer did not testify that he believed that the object contained a weapon; he stated only that the object *could* contain a weapon. This court has consistently held that a generalized belief, based on experience, that an object *could be* a weapon or *could contain* a weapon is insufficient to warrant seizure of the object. Rather, the officer must believe, based on particularized, articulated facts, that the object was a weapon or did contain a weapon. *See, e.g.*, *State v. Hoskinson*, 320 Or 83, 88, 879 P2d 180 (1994) (although wallet could contain a weapon, search of the defendant's wallet not justified where officer could state no specific reason to believe that the wallet did contain a weapon or means of escape); *State v. Boyd*, 101 Or App 649, 652-53, 792

P2d 462 (1990) (seizure of small metal box not justified where officer did not believe box contained a weapon).

In summary, the officer seized the container in order to exclude the possibility that it contained a weapon, not because the officer believed that it did. Neither ORS 131.625(2) nor the officer safety doctrine permits the officer to seize the container on that basis, as the trial court correctly held.[5] Consequently, under existing law, I believe that we are obliged to affirm the trial court's suppression order.

For the foregoing reasons, I respectfully dissent from the majority's reversal of the suppression order.

---

[5] Because the court granted the motion to suppress, we must assume that the trial court decided factual issues in a manner consistent with the ultimate conclusion that it reached. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). Consequently, we are bound by the court's implicit finding that the officer did not subjectively believe that the container contained a weapon if there is evidence to support that finding. There is such evidence in this case.