RICHARDSON, J.
Defendant appeals his conviction for Possession of a Stabbing Weapon, ORS 166.510, contending the weapon was obtained by an illegal search. That issue requires an application of the Oregon "stop and frisk” statutes, ORS 131.615 and 131.625. Defendant does not argue the police officer had insufficient grounds under ORS 131.615 to stop him but contends first, the officer must make "reasonable inquiry” before conducting a frisk and second, the totality of circumstances does not warrant a reasonable suspicion the defendant was aimed and presently dangerous. ORS 131.625.[1]
The searching police officer was on a routine patrol in a marked police car at approximately 4 a.m. He observed two males near the rear door of a restaurant which was not open for business at that hour. His suspicions were aroused and he turned his patrol car around to investigate. When he returned near the location where he first observed the two men they had left. He radioed for assistance from another police patrol unit with the intention of investigating a possible burglary and to confront the two men. He subsequently saw them walking down an alleyway between a grocery market and some apartment buildings. From the circuitous route they would have had to follow to arrive at that location the officer surmised they were trying to avoid him. The officer testified he had patroled this area for three years and knew it was a high crime area particularly for burglary and theft and that foot traffic was unusual at that hour.
One of the persons was the defendant whom the officer did not know, however, the other was known to the officer as a "convicted thief and a night person.”
*[498] The officer immediately confronted the defendant and told him he was going to conduct a pat-down search for weapons which he did, and discovered a switchblade knife in defendant’s pocket. The officer testified that neither man made any threatening gestures or indicated in any way they were armed. He searched for weapons, he stated, because of the late hour, the fact he did not know the defendant but knew the other person was a convicted thief, the defendant was wearing baggy clothing which made it difficult to tell if he had a weapon and he wanted to make certain they were not armed before questioning them about a possible burglary.
Defendant challenges the search on essentially two grounds. First, he argues, assuming the officer had a reasonable suspicion for a stop under ORS 131.615, he must make a "reasonable inquiry” of defendant before conducting the pat-down search authorized by ORS 131.625. Secondly, he argues, there must be specific articulable facts supporting a reasonable suspicion that defendant was armed and dangerous before a pat-down search is justified. He challenges the search only on statutory not constitutional grounds. However, the exclusionary rule announced in Mapp v. Ohio, 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933 (1961), is applicable to evidence obtained in violation of these two statutes. State v. Valdez, 277 Or 621, 561 P2d 1006 (1977). If the search was improper, the evidence must be excluded.
These two statutes were enacted as part of the Revised Criminal Procedure Code and are an attempt to articulate the constitutional principles justifying a "stop and frisk” set out in Terry v. Ohio, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968).[2] See, Proposed Oregon Criminal Procedure Code (1972), at 24.
*[499] ORS 131.615 provides in material part:'
"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.
«ífc * * * * 99
ORS 131.625 states:
"(1) A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other persons present.
* * * * 99
"Reasonably suspects” is given the following meaning in ORS 131.605(4):
" 'Reasonably suspects’ means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625.”
 The interrelationship between the section authorizing a "stop” (ORS 131.615) and that authorizing a "frisk” (ORS 131.625) is limited. Before a peace officer may conduct a "frisk,” he must have lawfully stopped the person pursuant to ORS 131.615. In other words he must be lawfully in a position to conduct the frisk. See, State v. Evans, 16 Or App 189, 517 P2d 1225, Sup Ct review denied (1974). Beyond that these sections give separate authority. The commentary by the Criminal Law Revision Commission charged with drafting the proposed code contains the following:
"* * * The provisions on 'frisk’ are separated from the provisions of 'stop’ so as to make it clear that a frisk does not always follow a stop. A frisk is a distinct procedure from a stop and must be justified on completely separate grounds. However, as was the case in Terry, the stop and frisk can occur simultaneously.” Proposed Oregon Criminal Procedure Code (1972) at 27-28.
These two sections, as the commentary indicates, are separate grounds for making a stop and then conducting a frisk. They do not set forth a police procedure code which must be followed seriatim to make a search *[500] lawful. It is not necessary for the peace officer to make an inquiry of the stopped person before he proceeds to search. The statute only requires he make a lawful stop and have a reasonable suspicion the stopped person is armed and dangerous before conducting a search. The circumstances known to the officer when he makes the stop may well in addition justify an immediate search for weapons for his own safety and the safety of others. To require any inquiry in that case may invoke the danger spoken of by Justice Harlan in his concurring opinion in Terry v. Ohio, supra:
«* * * There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet.” 392 US at 33.
Defendant’s second contention is likewise rejected. The officer suspected the defendant and his companion were involved in a burglary. He was approaching these two individuals alone in an alleyway at an early hour. He knew one of the men had been convicted of theft. It is reasonable to infer that people who commit burglaries commonly carry weapons and thus present a danger to the officer who confronts them. See, State v. Fent, 29 Or App 249, 562 P2d 1239 (1977).
Affirmed.

 Defendant’s challenge to the search proceeds upon the assumption arguendo that the initial stop was justified under ORS 131.615. We therefore do not decide that issue but proceed, as does the defendant, to analyze the search as if the stop were legal.

ORS 131.615 as enacted restricts the right to "stop” to situations where the peace officer reasonably suspects that a person "has committed a crime.” In this regard it adopts a different rule from the decision in Terry v. Ohio, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), which concerned suspicion a crime was about to be committed.