Argued and submitted February 17, affirmed September 14, 1988

# STATE OF OREGON,
*Respondent,*

*v.*

# DALYA LEE HASAN,
*Appellant.*

## (DA 332813; CA A44707)

760 P2d 1377

Michael E. Kolhoff, Wilsonville, argued the cause for appellant. With him on the brief was Theresa M. Welch, Wilsonville.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals the denial of her motion for judgment of acquittal and her conviction for resisting arrest. ORS 162.315. We affirm.

This case arises from an incident which occurred in the early morning hours of November 14, 1986, involving defendant, a 5'4", 102 lb black female, and Officer Esler, a 6'5", 300 lb white male. The trial court described the facts:

"Here's the way I see the situation. The police had received a call about an assault. Officer Olson goes to the house where they received the notice it had occurred. No one was there; she leaves.

"Officer Esler then finds a man who is bleeding from his face, he says he is attacked, has been attacked by four females; three blacks, one white, at a certain address. He puts this man in the car, they drive to the address, and they see outside four females; three black, and one white. That is sufficient, clearly, for Officer Esler to investigate further.

"Certainly he had articulable grounds to believe a crime had been committed. Certainly under *Terry* and possibly even under the probable cause standard, he had the right, the duty to investigate. If this man had, having been assaulted, had a knife sticking out of his shoulder, it would have been the same thing.

"There is very little evidence, as to the alleged, and it's really not that important in this case, as to this alleged assault. It is important in this sense, that alleged assault had racial overtones.[1] The defendant probably was rightfully upset, if in fact it did have racial overtones. The officer comes up, he is white, rightfully or wrongfully, [defendant] feels, she's not going to get a fair shake. He goes up and says he's going to investigate. Asks their names, she says, 'I don't have to give you my name.' She's right. She doesn't have to identify herself to a police officer, even if she is charged with a crime. But she does have to stay there until an investigation on the scene is made.

"It seems to me ridiculous to believe that Officer Esler, who is 6'5" and 300 pounds would pick out [defendant] to grab instead of [another member of the group]. And the other people had gone out. I believe [defendant] was making a move to

---

[1] The victim had been assaulted by a group of women after he called out racial epithets to them.

leave the premises. He grabbed her, and started bringing her [from the yard] down to [the police car on the street] where the alleged witness [the victim] to this assault was.

"[Esler is] 6'5", 300 pounds, [defendant] is substantially smaller. She tries to go, he puts her in this ['pain compliance'] lock, this hold. He says it hurts, it's supposed to hurt. Brings her down [to the police car]. In the meantime she is fighting, she's pushing him. No question in my mind, that at least at this point she couldn't hurt him. I mean it's just, I agree with the defense at this point it couldn't happen.

"They reach a point when her brothers come out, and she is still yelling, screaming, 'let me go,' etc. Obviously, her brothers come out, they see a 6'5" police officer, having their 5'4" sister, they're going to be upset. They're going to probably be very upset.

"The situation became volatile. It became more than volatile. It became violent. The brothers, not all of them, but at least a couple of them, intervened physically. I believe Officer Olson when she says her glasses were knocked off, she was pushed, she was shoved. This was not simply a shouting match.

"[During the melee, the victim identified defendant as one of his assailants, and Esler placed her under arrest and attempted to handcuff her.]

"Because of the intervention of [defendant's] brothers, or friends, Officer Esler, who should have been able to handcuff her just like that, in a second, could not do so.

"There's no doubt, that she, in my mind, that she was pushing, that she was shoving, she was yelling.

"* * * * *

"I don't believe, that [defendant] by herself, and by her actions, was capable of inflicting or threatening the use of substantial harm or injury to Officer Esler. If the state is to succeed here, it has to succeed on the theory that she was a fomenter, an agitator. Had she gone along quietly none of this would have happened, none of the danger, and I believe the danger from, not [defendant] but from her brothers, was real. And that Officer Esler had a right to be afraid because there were only two of them, him and Officer Olson, who was much smaller."

Defendant asserts two assignments of error.[2] In the first, she contends that the officer's use of force was unlawful—both as to the stop and the arrest—and that, therefore, she was justified in defending herself. In the second, she contends that she should have been acquitted because she did not "resist" within the meaning of the statute and that there was no evidence of intent to resist arrest or to be an accomplice.

We begin by addressing the officer's use of force to stop defendant. ORS 131.605(5) provides:

"A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

The initial stop was lawful. The officer's information was that a group composed of one white woman and three black women associated with a specific address had recently unlawfully attacked someone. Upon arrival at the residence, the officer saw a group matching that description. Accordingly, he could lawfully stop and make a reasonable inquiry of members of the group. ORS 131.615.

■ Regarding the officer's use of force in making the stop, defendant contends that police have no statutory authority to restrain a person forcibly unless the person is arrested, because neither the stop statute, ORS 131.615, nor ORS 161.235[3] authorizes the use of force in a stop.[4] Defendant is incorrect. The stop statute clearly contemplates that a person may be involuntarily stopped. ORS 131.605(5) defines a

---

[2] We have rephrased the assignments of error to correspond more accurately to the two basic questions presented by defendant's brief, to-wit: (1) the extent and effect of the force used by the officer during the course of the stop and arrest and (2) the sufficiency of the evidence as tested by defendant's motion for judgment of acquittal.

[3] ORS 161.235 provides:

"Except as provided in ORS 161.239, a peace officer is justified in using physical force upon another person when and to the extent that the peace officer reasonably believes it is necessary:

"(1) To make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful; or

"(2) For self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent an escape."

[4] Defendant does not argue that the *amount* of force used was unlawful. Rather, she argues that the use of *any* force by the officer to restrain her was unlawful.

stop as a "temporary restraint of a person's liberty." ORS 131.615(2) characterizes the stop as "detention and inquiry." Indeed, the distinguishing feature of a stop is that "a person's liberty is restrained by either physical force or by a show of authority." *State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981); *State v. Warner,* 284 Or 147, 162, 585 P2d 681 (1978). We hold that the officer's use of force to restrain defendant was lawful.

■ ■ Esler's actions did not otherwise exceed the lawful bounds of the stop. Arranging to have the victim, who was present at the scene, view defendant was within the scope of the reasonable inquiry allowed by the statute. *Walker v. City of Portland,* 71 Or App 693, 698, 693 P2d 1349 (1985). Moving defendant from the yard to the police car also did not violate the statute. ORS 131.615(2) provides that "[t]he detention and inquiry shall be conducted in the vicinity of the stop * * *." Whatever the limits of the term "vicinity of the stop," *see Walker v. City of Portland, supra,* 71 Or App at 698, they are not violated by moving a person several yards, as was the case here. Neither were the officers' actions unreasonable, given the volatile situation facing them. It appears that they intended to bring the victim to defendant until they were thwarted by defendant's attempt to get away. At that point, the officers apparently decided to leave the victim in the car and bring defendant to him. We hold that the officers' actions were lawful.

Turning to the arrest, defendant appears to contend that the *force* used during the arrest was unlawful because the *arrest* was unlawful. She contends that the arrest was unlawful because the use of force during the *stop* was unlawful. The argument is a bit circular. Because we hold that the use of force during the stop was lawful, and defendant does not otherwise challenge the lawfulness of her arrest, we reject her argument.

■ The final aspect of defendant's first assignment of error concerns her argument that she had the right to defend herself, because the use of force to detain her during the stop and arrest were unlawful. Because we hold that the use of force by the officer was lawful, defendant did not have the right to defend herself.

We turn to defendant's second assignment of error

and address her contention that, under the facts of the case, she cannot be convicted of resisting arrest, because she did not "resist" and there was insufficient evidence of intent to resist. ORS 162.315 provides:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer in making an arrest.

"(2) 'Resists,' as used in this section, means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person."

The trial court found,

"given the relative sizes of the officer and the defendant and the absence of weapons, that the defendant by her own actions did not directly create a substantial risk of physical injury to any person."

Therefore, the court held, defendant's actions alone would not be sufficient to convict her of resisting arrest. However, the trial court convicted on the basis of *State v. Jordan,* 38 Or App 421, 591 P2d 431 (1979), where we affirmed a conviction for resisting arrest without opinion over the objections of a dissenter. The trial court inferred what the majority position was from the dissent and applied it to this case. However, because *Jordan* was decided without opinion, the state could not and does not rely on it. Instead, it argues that, although defendant could not be convicted for resisting arrest on the basis of her actions viewed in isolation, her shouting and thrashing about while her brothers were coming to her aid constitutes aiding and abetting her brothers' crime of resisting her arrest.

ORS 161.155 provides in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime * * *."

Defendant's brothers were resisting her arrest. The

trial court found that, as a result of their physical intervention, Esler was unable to handcuff defendant immediately after her arrest. The trial court also found that the brothers created a "real danger" to the officer and that the situation involved a "substantial risk of physical injury." Further, the trial court found that defendant continued to thrash about after her brothers intervened and that, "although defendant did not directly create a substantial risk of physical injury, she did create such a risk by inciting her friends and family to interfere in the arrest." We are bound by the trial court's findings of fact, if there is evidence to support them, *Ball v. Gladden,* 250 Or 485, 487-8, 443 P2d 621 (1968), and we view that evidence in the light most favorable to the state. *State v. Harris,* 288 Or 703, 723, 609 P2d 798 (1980). The evidence would permit a rational fact finder to conclude that, by her thrashing about, defendant intended to assist her brothers in resisting her arrest. Thus, it was not error for the trial court to deny defendant's motion for a judgment of acquittal or to convict her.

Affirmed.