Argued and submitted April 28, 1993; resubmitted In Banc April 6, affirmed August 24, petition for review allowed by memorandum opinion October 27, 1994 See 320 Or 315 (1994)

STATE OF OREGON,
*Respondent,*

*v.*

JAMIE DALE LUMPKIN,
*Appellant.*

(91CR0280ST; CA A72934)

880 P2d 468

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DEITS, J.

Edmonds, J., concurring.

Durham, J. pro tempore, dissenting.

**DEITS, J.**

Defendant appeals his conviction, on stipulated facts, for possession of a controlled substance. ORS 475.992-(4)(b). He assigns error to the trial court's denial of his motion to suppress evidence seized from his person and his vehicle. We affirm.

On the morning of April 24, 1991, Officer Ludwig responded to a report that a person matching defendant's description was attempting to break into a car parked near an elementary school. Ludwig confronted defendant, who was confused and distracted. His eyes darted from side to side as Ludwig asked him questions about why he had approached the car. He paced around and moved his hands and body in an agitated manner. When defendant was asked for identification, his answers were initially incoherent and nonresponsive; however, he eventually communicated his identity by producing a citation that he had received following a car accident several hours earlier. Because Ludwig's observations of defendant caused him to be concerned that defendant would attempt to flee or fight before the initial inquiry was completed, Ludwig asked defendant to place his upper body and hands on the trunk of the patrol car. Ludwig suspected that defendant might be under the influence of controlled substances, but he did not intend to search defendant at that time and did not place him under arrest.

While in this position, defendant continued to act "fidgety." On two occasions during the questioning, defendant stiffened his arms, arched his back, lifted his torso from the trunk, and placed his hands toward his body out of Ludwig's view, contrary to Ludwig's express instructions. Concerned that defendant might have been reaching for a weapon, Ludwig did a cursory pat of defendant's waist area and then patted the front of his jacket. He felt no bulky item but was concerned that a soft bulge that he felt in a breast pocket might contain a razor blade or a fish hook. Ludwig reached into the pocket to remove the item, which was a small orange and black nylon pouch in which he could see the edge of a clear plastic baggie. Recognizing the clear baggie as a common means of packaging controlled substances, Ludwig removed the clear baggie from the pouch and saw that it

contained a white powdery residue. Ludwig arrested defendant for possession of a controlled substance and conducted a search for more controlled substances. He found $258 in defendant's wallet and another baggie with white powder residue in defendant's pants pocket.

After he was taken to the police station for booking, defendant continued to deny any attempt to steal the car.[1] He said that he had wrecked his own car several hours earlier, while he was high, and that he had been on his way to the towing company to retrieve his car and drive home to California. Defendant then consented to Ludwig's request to search the car at the towing company. During that search, Ludwig discovered and seized more controlled substances.

Defendant filed a motion to suppress the seized evidence. The trial court granted the motion in part, suppressing statements made by the defendant after the nylon pouch was found and additional evidence seized by Ludwig at the police station. Defendant appeals that part of the order allowing the use of the evidence seized during the frisk, the search of his person and the later search of his car.

1.      Defendant does not challenge the validity of the initial stop.[2] He first argues that the officer lacked a reasonable basis for asking him to place his upper body and hands on the trunk of the police car. We are bound by the trial court's findings of fact on this issue, which are supported by evidence in the record. *State v. Miller*, 300 Or 203, 227, 709 P2d 225 (1985). The court found that

"[t]he Defendant's eyes darted around from side to side. The Defendant fidgeted his feet. He paced around and he appeared agitated. * * * The officer testified that based upon his experience these symptoms were precursors to a suspect fleeing."

Because Ludwig reasonably believed that defendant might flee during the inquiry, his request that defendant place his

---

[1] The record is not clear as to when defendant was charged with attempted unauthorized use of a vehicle. ORS 164.135. That charge was later dismissed.

[2] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

hands and upper body on the trunk was permissible. *See State v. Hasan*, 93 Or App 142, 760 P2d 1377 (1988).

■ Defendant next argues that the frisk for weapons was not justified under ORS 131.625. ORS 131.625(1), which is part of Oregon's "stop and frisk" law, allows a peace officer to conduct an external patting of a stopped person's outer clothing "if the officer reasonably suspects that the person is armed and presently dangerous." *See* ORS 131.605(2). "Reasonably suspects" means that the officer "holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts." ORS 131.605(4). An officer's generalized concern for safety is not sufficient to justify a frisk. Rather, the officer must articulate particularized facts creating a reasonable suspicion that the stopped person poses an immediate threat. *State v. Matthys*, 106 Or App 276, 282, 808 P2d 94 (1990), *rev den* 311 Or 433 (1991).

At the suppression hearing, Officer Ludwig identified such particularized facts. He testified that he thought that defendant was about to run away from him or was possibly going to fight with him.[3] He stated that "there was a strong likelihood" that defendant was under the influence of controlled substances. He also testified that, despite his instructions to defendant to keep his arms spread on the trunk of the car, defendant twice pulled his arms and hands toward his midsection and out of Ludwig's view. Ludwig stated that these actions led him to believe that defendant possibly was reaching for a weapon. We conclude that Ludwig's belief that defendant was armed and posed an immediate threat to his safety was reasonable under the totality of the circumstances and that he was justified in frisking defendant. The trial court did not err in finding that the frisk was authorized.

■ Defendant next argues that even if the frisk was justified, the officer exceeded the permissible scope of the frisk. The pertinent statute is ORS 131.625(2), which provides:

---

[3] Officer Ludwig testified:

"It's hard for me to tell whether those motions he was making were actually precursors to someone fleeing or fighting. So I made no distinction. Either one would be bad for me in this case."

"If, in the course of the frisk, the peace officer feels an object which the peace officer reasonably suspects is a dangerous or deadly weapon, the peace officer may take such action as is reasonably necessary to take possession of the weapon."

Defendant contends that the statute did not authorize Ludwig to take possession of the object that he felt in defendant's pocket because Ludwig did not testify that he reasonably suspected that what he felt, a "soft bulge," was itself a weapon. The state, on the other hand, argues that the statute should be read to allow the removal of an item felt during an authorized frisk if an officer reasonably suspects, based on specific and articulable facts, that the object contains a dangerous or deadly weapon.

When interpreting a statute, we first look to its text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Because either reading of the statute is plausible here, we look to the legislative history to inform our inquiry of the legislative intent. *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611-12. The legislative purpose in enacting the stop and frisk statutes was to codify some of the principles set out by the United States Supreme Court in *Terry v. Ohio*, 393 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968). *State v. Davis*, 295 Or 227, 240 n 17, 666 P2d 802 (1983); *see also State v. Valdez*, 277 Or 621, 625, 561 P2d 1006 (1977). The Court in *Terry* held that an officer who reasonably believes that a lawfully stopped person is armed and dangerous may frisk the person to the extent necessary to discover weapons. The Court emphasized that "reasonableness in all circumstances" is the central inquiry when evaluating the constitutionality of a search. *Terry v. Ohio, supra,* 392 US at 26. In view of the legislative purpose to codify, at least in part, the principles of *Terry*, we conclude that if an officer has a reasonable suspicion, based on specific and articulable facts, that an object felt during a frisk contains a dangerous or deadly weapon, the statute allows the officer to take reasonable steps necessary to take possession of the object.[4]

---

[4] Defendant does not argue on appeal that Ludwig lacked authority to open the nylon pouch after removing it from the pocket.

Further, although not directly applicable, our reading of the statute is consistent with decisions regarding permissible police action under analogous circumstances. In *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), the Supreme Court analyzed the issue of officer safety under the Oregon Constitution and concluded that

> "Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, *during the course of a lawful encounter with a citizen*, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." (Emphasis supplied.)

Accordingly, if an officer is engaged in a lawful encounter with a citizen and develops a reasonable suspicion that the person is potentially dangerous, our review of the officer's actions focuses on whether the safety precautions taken were "reasonable under the circumstances as they reasonably appeared at the time." *State v. Bates, supra,* 304 Or at 525. We see no reason why the same analysis should not be applied when an officer is engaged in a lawful stop of a citizen under ORS 131.615(2).

Similarly, in reviewing the propriety of a search incident to arrest conducted for the arresting officer's safety, we focus on the reasonableness of the officer's actions in the light of the circumstances. In *State v. Baker*, 100 Or App 31, 34, 784 P2d 446 (1989), a search of the defendant's pocket for the purpose of ensuring officer safety was held to be unreasonable because the circumstances did not suggest that the defendant might be carrying a dangerous weapon that the officer could not detect by a patdown. The arresting officer knew that the defendant had several recent citations and arrests, none of which involved violence, and the defendant cooperated with the officer throughout the arrest and search. We concluded that the trial court erred in failing to suppress the contents of the defendant's pocket. In *State v. Boyd*, 101 Or App 649, 653, 792 P2d 462 (1990), we applied a similar analysis and concluded that where the arresting officer was not concerned for her safety and did not feel threatened when she felt what she believed to be a metal snuff box in the defendant's pocket, she had no legitimate reason to reach into

or remove anything from the pocket. Our reading of the frisk statute comports with this analysis of officer conduct.[5]

Under defendant's reading of the statute, even if an officer reasonably suspects that a stopped person is armed with a dangerous or deadly weapon and reasonably suspects that an object felt during a frisk contains a dangerous or deadly weapon, the officer may take *no* action for self-protection. If we were to read ORS 131.625(2) in the restrictive manner urged by defendant, police officers would be allowed to take reasonable steps to protect themselves in the course of any lawful encounter with a citizen *except* when that encounter was a stop under ORS 131.615(1). We do not believe that the language of the statute requires such a result or that the legislature intended such a result.[6]

The critical questions here, then, are whether Ludwig had a reasonable suspicion that the object that he felt contained a dangerous or deadly weapon and, if so, whether the steps taken were reasonably necessary to take possession of the object. As noted above, a reasonable suspicion is a belief "that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts." ORS 131.605(4). Ludwig testified that, based on his training and experience, persons encountered in police stops use small items, such as fish hooks or razor blades, as weapons. He further testified that, in previous pat-down searches, he had

_____

[5] The dissent criticizes us for failing to cite or distinguish *State v. Rogue-Escamilla*, 106 Or App 270, 806 P2d 1173 (1991), in which this court suppressed the contents of a wallet removed from the defendant's pocket after a pat-down for weapons. That case, however, has no relevance to the present one. The defendant there did not question the arresting officer's authority to *seize* the wallet from the pocket. As the dissent correctly explains, we held only that, absent some reasonable basis to believe that the wallet contained a weapon, the officer had no justification to *search* it. 106 Or App at 275. The question of whether Ludwig was justified in opening the pouch once he removed it from defendant's pocket is not before us.

[6] The dissent asserts that we are ignoring the plain language of ORS 131.625(2). However, interestingly, the dissent also finds it necessary to construe the statute's language and depart from the exact language of the statute. The dissent begins by saying that the statutory language authorizing an officer to remove an object that he or she reasonably suspects "is" a dangerous or deadly weapon also authorizes the officer to remove containers that ordinarily carry such weapons and that are not empty. The dissent then goes a step further to say that the statute might justify a seizure of a "nondescript pouch, bottle or can that an officer feels during a frisk." 129 Or App at 618. The dissent thus appears to find less fault with our analysis of the law than with our application of the law to the particular facts.

found items in "soft pack type containers" that could be used as weapons. He stated that after he instructed defendant to keep his upper body and hands on the trunk of the police car, defendant twice pulled his hands in toward his midsection, where the pocket in which Ludwig felt the soft bulge was located. Finally, he testified that when he felt the container in defendant's pocket, he was concerned that it contained a weapon.[7]

Under the totality of the circumstances, including defendant's specific actions *and* Ludwig's subjective belief and specific concerns based on his training and experience, Ludwig reasonably suspected that the object that he felt during the frisk contained a weapon, and that his removal of the pouch from defendant's pocket was reasonably necessary. The subsequent searches of defendant's person and vehicle thus were valid, and the trial court did not err in denying part of defendant's motion to suppress.

Affirmed.

**EDMONDS, J.,** concurring.

The majority and the dissent view this case as being governed by ORS 131.625(2). I write separately to suggest that the result in this case is not controlled by that statute. I begin by examining the lawfulness of the frisk that preceded the search of defendant's pocket.

ORS 131.625(1) authorizes a frisk for weapons when the officer reasonably suspects that the person he has stopped is armed and presently dangerous. A "frisk" is the external patting of a person's outer clothing. ORS 131.605(2). Here, the officer frisked defendant by patting down defendant's waist area, where he found nothing, and then defendant's jacket pockets, where he found a soft bulge. The justification

---

[7] Ludwig testified as follows:

"[Prosecutor] Did you feel any bulky items [when you conducted the pat-down of defendant]?

"[Ludwig] No, I didn't; other than a baggie or some sort of a container in his coat pocket.

"Q Did you have any concerns that that may contain some weapon?

"A I did."

for the conclusion that the frisk was lawful lies in the findings of fact made by the trial court.

"Officer Ludwig of the Redmond Police Department was dispatched to the Brown Elementary School, as a result of a report of a person being the Defendant's description, attempting to enter the vehicle of [another person]. * * *.

"[The officer] confronted the Defendant near the east side of Brown school. Almost immediately the officer noticed that the Defendant seemed confused and distracted. The answers to the officer's initial questions were not coherent nor responsive. The Defendant at one point appeared to believe he was in Ventura, California, rather than the State of Oregon.

"The Defendant's eyes darted around from side to side. The Defendant fidgeted his feet. He paced around and he appeared agitated. He looked wide-eyed and dazed, according to [the officer]. The officer testified that based upon his experience these symptoms were precursors to a suspect fleeing.

"The officer asked certain questions of the Defendant about what he was doing and why he was attempting to get into the car. And the Defendant first told the officer that his girlfriend had given him the keys, and that she had then gone to work. When the officer asked the Defendant where his girlfriend worked, he said, 'Ventura, California.' He also said that her name was 'Jamie.' After some further discussion between the officer and the Defendant, the Defendant then appeared to realize he was in the State of Oregon, not in California.

"The officer asked the Defendant for identification * * * the Defendant pulled out his wallet and attempted to locate identification * * *. The Defendant finally produced a citation from Crook County, and advised the officer that he had been in an accident earlier and had received that citation. It was at this time that the officer realized the Defendant's name was Jamie * * *.

"Based upon the officer's observations of the Defendant and the officer's fear [that] the Defendant would flee, the officer asked the Defendant to place his upper body and hands on the trunk of his patrol vehicle. This was to prevent the Defendant from fleeing while the officer completed his initial inquires. At the time the officer asked the Defendant to place his body and hands on the vehicle, he did not intend

to search the Defendant, and he had not placed the Defendant under arrest. At this time he thought it was possible the Defendant was under the influence of controlled substances.

"While the Defendant was leaning against the vehicle trunk, the officer became concerned for his own safety because of the Defendant's actions. The Defendant continued to act fidgety. He put his arms — he stiffened his arms, arched his back, lifted his torso from the trunk of the vehicle, and placed his hands toward his body out of the view of Officer Ludwig, contrary to Officer Ludwig's expressed instructions to him. The Defendant did this on two occasions. The officer then became concerned that the Defendant may be attempting to reach a weapon by these movements.

"The officer then patted down the Defendant beginning at the waist area where he found nothing. He next patted the jacket pockets of the Defendant, and in one jacket pocket found a soft — or discovered a soft bulge. The officer was particularly concerned that the Defendant may possess a small weapon which was easily concealed, such as a razor blade or a fish hook, which can be hidden anywhere. Based upon his training and his prior experience, he knew that these could be hidden and used as weapons. And he had previously found razor blades in soft containers on individuals. He did feel no bulky item such as a gun."

The officer proceeded to seize the item in defendant's pocket. The trial court further found:

"The officer removed this soft item from the Defendant's pocket. He described it as an orange and black nylon baggie, and it was approximately three inches long by about one and a half inches in diameter. The officer was concerned that it contained a weapon.

"After the officer pulled the baggie out of the Defendant's pocket, he noticed that the top was open, and inside he could see the edge of a clear plastic — a small clear plastic baggie. Based upon the officer's training and on his experience in arrests in the past, he recognized the small clear plastic baggie as an item commonly used for controlled substance packaging."

The search of defendant's jacket pocket potentially implicates ORS 131.625(2). It provides:

"If, in the course of the frisk, the peace officer feels an object which the peace officer reasonably suspects is a dangerous or deadly weapon, the peace officer may take such

action as is reasonably necessary to take possession of the weapon."

Here, the trial court did not find that the officer "felt" an object in defendant's pocket which he reasonably suspected was a dangerous or deadly weapon. If the legislature intended ORS 131.625(2) to be a limitation on all searches that are preceded by a frisk, then the dissent is correct that the contents of the baggie must be suppressed.

So far as I can determine, whether the legislature intended ORS 131.625(2) to be a limitation on the authority to conduct all searches that are preceded by a frisk, has not been expressly decided by us or the Supreme Court. Some discussion of what we have held regarding subsection (2) is instructive. In *State v. Miner*, 31 Or App 495, 570 P2d 998 (1977), the defendant argued in part that under ORS 131.625, the officer must make a reasonable inquiry before conducting a frisk. We rejected that argument, saying:

"These two sections [ORS 131.615 and ORS 131.625], as the commentary indicates, are separate grounds for making a stop and then conducting a frisk. *They do not set forth a police procedure code which must be followed seriatim to make a search lawful.* * * *" 31 Or App at 499. (Emphasis supplied.)

In *State v. Kurtz*, 46 Or App 617, 612 P2d 749, *rev den* 289 Or 588 (1980), the police executed a search warrant inside a residence. The defendant was discovered in the basement of the house. An officer patted him down for weapons, felt a "large bulky object" in his back pocket and removed a wallet and a notebook to see if there was a weapon concealed in them. There was not, but later, the contents of the notebook were seized. There was no evidence that the officer had a subjective belief that what he felt was a weapon, nor were there objective facts to lead the officer to believe that the defendant was armed. The officer did testify that it was his general practice in frisking to remove any item that might conceal a weapon. We held that the statute did not authorize that "scope of [a] frisk." 46 Or App at 621.

In summary, our decisions have held ORS 131.625(2) to be applicable when a generalized search occurs after the officer has grounds for and commences a frisk. Under those circumstances, subsection (2) expressly permits an officer to extend the frisk beyond an external patting of the

subject's outer clothing when the officer feels what could be a weapon *during* the frisk. This case presents a different issue because the officer had a specific articulable reason for believing that defendant could be secreting a weapon in a particular area of his body *before* the officer commenced the frisk: On two occasions, defendant reached toward the midsection of his body which was out of the view of the officer despite the officer's instructions to defendant to keep his hands on the vehicle and visible.

The only support in Oregon case law, of which I am aware, for the proposition that ORS 131.625(2) is a limitation on all searches that are preceded by a frisk is found in the concurring opinion of Justice Roberts in *State v. Davis*, 295 Or 227, 244, 666 P2d 802 (1983). She wrote:

> "It is my conclusion that our statute [ORS 131.625] must be applied on its terms and provides the beginning point for an analysis of any stop and frisk situation. It has simply superseded *Terry* [*v. Ohio*, 392 US 1 88 S Ct 1868, 20 L Ed 2d 889 (1968)]. Our statute contains no language authorizing full searches of the person or beyond, nor does it provide for alternative measures, reasonable or otherwise. Rather, the statute confines a reasonable search to an external patting of outer clothing of a lawfully stopped person. * * * [W]here a law exists authorizing a particular search or seizure, and that law is itself constitutional, our task is limited to assessing the legality of police conduct on those terms. And when an officer's act exceeds his or her statutory authority we have no occasion to consider whether such conduct conformed with state or federal constitutional requirements." 295 Or at 247.

I respectfully disagree for four reasons. First, the text and context of ORS 131.625(2) does not contain limiting language, but authorizes an expanded search based on specific information derived from the external patting of the subject's clothing. The concurring opinion in *Davis* perceives that grant of authority as constituting a general limitation on an officer's authority to otherwise search for weapons that may endanger the officer or others. The statute does not say what the opinion contends for it to say. If that interpretation is to be found in the statute, it must arise as a result of the necessary implication from the language in the statute. *Minard v. Douglas County*, 9 Or 206, 211 (1881). Authority that is implicit in a statute is the authority to make an express rule

effectual. *See Pioneer Real Estate Co. v. City of Portland*, 119 Or 1, 247 P 319 (1926). That rule does not aid here, because the proposed construction of subsection (2) as an implicit limitation on all searches preceded by a frisk causes the statute to function as a limitation on the authority to search under Article I, section 9, not as a grant of additional authority under the statute. Moreover, we are prohibited by law from adding to the scope of a statute through the guise of statutory interpretation. *See* ORS 174.010. I would hold that subsection (2) does not expressly or implicitly limit the authority of an officer to perform a search otherwise authorized by the constitution.

If the text and context of subsection (2) are not dispositive, then we are to turn to the legislative history underlying ORS 131.625. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). It demonstrates that the legislature intended solely to define the nature and extent of the inquiry of a stopped person. For instance, a provision in an early draft of the bill that became ORS 131.625 excluded other evidence that was found as a result of the frisk. The drafters decided to delete that provision. That deletion suggests that the legislature did not intend ORS 131.625 to govern the admissibility of evidence seized during a frisk,[1] or to promulgate a rule that would circumscribe searches that follow frisks under every circumstance. Accordingly, subsection (2) permits an expanded search based on a particular circumstance, but the statute does not purport to regulate other circumstances. Furthermore, the drafters of the Model Code of Pre-Arraignment Procedure (MCPP), on which ORS 131.625 is based in part, specifically rejected suggestions to incorporate special rules regarding the admission of items other than weapons that are discovered in the course of a frisk.[2]

---

[1] *See* Minutes, House Judiciary Committee, May 7, 1973, p 8; Tape recording, House Judiciary Committee, May 7, 1973, Side I at 238-60.

[2] The commentary to the Proposed Oregon Criminal Procedure Code says that "[s]ection 32 [ORS 131.625] is derived from [tentative draft of the] MCPP § 2.02(4)." In the final draft of the MCPP, that section was renumbered as § 110.2(4). Model Code of Pre-Arraignment Procedure 7 (1975). The commentary to that section says:

"No special rule is proposed as to the seizure or admissibility of things discovered in the course of the search here authorized. Thus, by the general law, any seizable item discovered in a proper search could be seized, and admitted into

Third, reading the statute to act as a limitation on the right to search creates the potential for absurd results. Assume that an officer acting with reasonable suspicion that a crime has been committed stops a defendant and during the stop, but before a frisk, he observes the defendant secrete a razor blade in his jacket pocket. During the frisk, the officer feels a soft bulge in the pocket, but does not feel the razor blade. If the statute is read as a limitation on all searches preceded by a frisk, the officer could search no further. In determining the meaning of a statute, we are required to read statutes in a way that will not create an absurd or unreasonable result. *McKean-Coffman v. Employment Div.*, 312 Or 543, 549, 824 P2d 410 (1992). Read in the way that the concurring opinion in *Davis* suggests subjects a police officer to obvious danger and requires him to ignore what he has seen, to his peril.

Finally, Justice Roberts wrote her opinion before *State v. Bates*, 304 Or 519, 747 P2d 991 (1987). In *Bates* the court held that Article I, section 9, does not prohibit an officer from taking reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, he develops a reasonable suspicion based on specific and articulable facts that the citizen poses an immediate threat of serious physical injury to the officer. 304 Or at 524. Here, the encounter with defendant was lawful because of the report that the officer had received and defendant's actions. Based on all the circumstances, the officer had a reasonable suspicion that defendant posed an immediate threat to him, because defendant refused to obey the officer's instructions to keep his hands where the officer could see them, and because he kept reaching for the middle portion of his body which was out of the view of the officer. As the court said in *Bates*:

> "[I]t is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable

---

evidence. If the circumstances did not justify a search, or if the search was more extensive than authorized in this Subsection, then the products of such a search would not, of course, be admissible in evidence." Model Code of Pre-Arraignment Procedure 11 (1975).

latitude to take safety precautions in such situations." 304 Or at 524.

I would hold that it was reasonable for the officer to investigate those areas toward which defendant had been reaching to determine if they contained weapons. Based on his experience, the officer knew that weapons such as razor blades or fish hooks are often secreted in soft bulges such as the one felt by the officer in defendant's jacket. It was not an unreasonable step under the circumstances for the officer to protect his own safety to remove the object making the bulge to determine if it contained a razor blade or fish hook that could be used by defendant against the officer. When the officer undertook that task, evidence that the item contained a controlled substance appeared in plain view, which led to probable cause to seize and search it.

In summary, defendant was lawfully stopped under ORS 131.615 and lawfully frisked under ORS 131.625(1). ORS 131.625(2) is inapplicable because the officer did not feel an object which he reasonably suspected was a dangerous or deadly weapon. However, it does not necessarily follow that the officer unlawfully investigated the contents of the bulge. If there were other objective facts of which Ludwig was aware that would warrant a person of reasonable caution to believe that he needed to take appropriate steps to protect himself, then he was authorized to search for a concealed weapon under Article I, section 9. *See State v. Ehly*, 317 Or 66, 90, 854 P2d 421 (1993). Here, Ludwig knew before the frisk commenced that defendant kept reaching for an area of his body concealed from the officer, contrary to the officer's express admonishment. In the light of his experience, it was reasonable for Ludwig to believe that the bulge that he found by patting the outside of defendant's pocket could contain the very object for which it appeared defendant was reaching. Because the predicate for the search was not only what was discovered during the frisk, ORS 131.625(2) does not control the outcome of defendant's motion to suppress, and the lawfulness of the search is sustainable under section 9. For this reason, I concur in the majority's result, but not in its reasoning.[3]

---

[3] The dissent says:

Riggs, J., joins in this concurring opinion.

**DURHAM, J. pro tempore,** dissenting.

The issue in this case is whether ORS 131.625(2) authorized Officer Ludwig to take possession of the object that he felt during the frisk.[1] ORS 131.625 provides:

"(1) A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present.

"(2) If, in the course of the frisk, the peace officer *feels an object which the peace officer reasonably suspects is a dangerous or deadly weapon,* the peace officer may take such action as is reasonably necessary to take possession of the weapon." (Emphasis supplied.)

The reasonable suspicion required by ORS 131.625(2) "means a reasonable belief that an object *is* a dangerous or deadly weapon." *State v. Kurtz,* 46 Or App 617, 620, 612 P2d 749, *rev den* 289 Or 588 (1980). (Emphasis supplied.)

The majority departs from *State v. Kurtz* and the text of the statute in announcing that officers may remove and examine any object if the

"officer has a reasonable suspicion, based on specific and articulable facts, that an object felt during a frisk *contains* a

---

"The parties do not suggest that the search of the pocket and the soft container, and the seizure of the contents of the container, were authorized by any law other than ORS 131.625(2). The argument presented in the concurring opinion of Edmonds, J., was not preserved by the parties below, or briefed in this court." 129 Or App at 620 n 4.

Before the trial court, defendant moved to suppress the evidence under ORS 131.625(2) and Article I, section 9. Because ORS 131.625(2) is inapplicable to the facts of this case, an analysis of the propriety of the seizure of the soft container under section 9 is required to decide the motion to suppress.

[1] Because I conclude that the seizure of the item in defendant's pocket was not authorized by ORS 131.625(2), I assume, for the purpose of discussion, that the circumstances here justified a frisk under ORS 131.625(1). The record may not justify that assumption. ORS 131.625(1) permits a frisk if a stopped person is "armed and presently dangerous * * *." *State v. Matthys,* 106 Or App 276, 282, 808 P2d 94, *rev den* 311 Or 433 (1991), holds that the risk must be an "*immediate threat,*" and that "[t]enseness and reluctance to talk do not demonstrate an immediate threat." (Emphasis supplied.) The majority does not explain why defendant's hand motions, violation of directions and possible intoxication demonstrate that defendant was *armed* and an immediate threat to the officer.

dangerous or deadly weapon * * *." 129 Or App at 606. (Emphasis supplied.)

Ordinarily, the text and context of a statute is the starting point in our determination of the legislature's intent. *Pierce v. Allstate Ins. Co.*, 316 Or 31, 35, 848 P2d 1197 (1993). The text is the best indication of the legislature's intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). In determining the meaning of terms chosen by the legislature, words of common usage that are not defined in the statute should be given their plain, natural and ordinary meaning. *State v. Bea*, 318 Or 220, 225, 864 P2d 854 (1993). The court is forbidden to insert into a statute words that it believes were omitted. ORS 174.010. In rewriting the frisk statute with words that the legislature did not use, the majority fails to apply that required methodology.

ORS 131.625(2) authorizes seizure of a container that the officer feels during a frisk if the officer reasonably suspects that it is of a type that ordinarily carries a dangerous or deadly weapon, and that it is not empty. Examples of such a container include a pistol holster and a knife scabbard. In almost every imaginable police-citizen encounter, if an officer feels a loaded holster during a frisk, the officer's belief that the suspect is armed is reasonable. That construction gives effect to the statutory text that permits a seizure if the officer reasonably suspects that the object *is* a weapon. The majority's construction ignores that language.

Moreover, the majority's discussion of ORS 313.625(2) implies that the statute permits seizure of any container that is capable of enclosing a tiny weapon. Although a different record might justify seizure of a nondescript pouch, bottle or can that an officer feels during a frisk,[2] the record here falls short. Ludwig did not state that he believed that the object was, or contained, a weapon, and he articulated no facts sufficient to create a reasonable suspicion that the soft bulge in defendant's pocket contained a dangerous or deadly weapon.

---

[2] For example, if the officer has information that the suspect is carrying a container of a substance that is potentially harmful to the officer, the officer's belief that the container is a weapon is reasonable.

The majority relies on three findings of the trial court to justify the search: (1) Ludwig knew that razor blades and fish hooks can be used as weapons; (2) in the past, he occasionally had found those items in "soft pack type containers"; and (3) after Ludwig instructed defendant to keep his hands and body on the trunk of the police car, defendant twice pulled in his hands. Only the third finding is a specific and articulable fact; the others simply recite facts from other encounters, not facts tied to this case. Although an officer may rely in part on training and experience in forming a reasonable suspicion, *see State v. Lichty*, 313 Or 579, 585, 835 P2d 904 (1992), suspicion is not reasonable unless it correlates with the specific facts of the present case. *See State v. Bates*, 304 Or 519, 747 P2d 991 (1987); *State v. Valdez*, 277 Or 621, 626, 561 P2d 1006 (1977).

> "[A] correlation may be statistically or historically correct, but defendant is an individual, not a statistic. An officer must point to facts related to the individual, not to general statistics, to justify an intrusion of this nature." *State v. Baldwin*, 76 Or App 723, 727, 712 P2d 120 (1985), *rev den* 301 Or 193 (1986).

Ludwig's knowledge that soft bulges sometimes contain razor blades or fish hooks, and that those items can be used as weapons, is not a fact that creates a reasonable suspicion that this soft bulge is, or contains, a weapon.

We have held that ORS 131.625(2) does not authorize officers to remove objects simply because they are capable of containing a weapon. *State v. Kurtz, supra*, 46 Or App at 620. In *Kurtz*, during the course of a frisk, the officer removed a "large bulky object" from the defendant's back pocket for the purpose of "seeing if there was a weapon in there or not." We held that the search was invalid, because

> "the evidence shows no 'specific articulable facts' * * * to support an objective belief that the bulky object was a dangerous or deadly weapon. * * * If the state's position is that in the course of a patdown frisk an officer may remove anything which might conceal any sort of a weapon, that is not what the statute says." 46 Or App at 620.

That statement controls the outcome here, yet the majority disregards it. The majority does not cite or attempt to

distinguish *State v. Kurtz*.[3] I am concerned that this case will confuse the bench and bar about whether *State v. Kurtz* or this case is the authoritative interpretation of the frisk statute, and that that confusion will hamper decision making in a large number of trial court proceedings that involve that statute.

The only specific fact to which the majority points is that defendant twice pulled his hands "in toward his midsection" while stretched out on the trunk of the police car. That fact, even when viewed in the light of the officer's training, is not sufficient to demonstrate, in the words of ORS 131.625(2), that the soft bulge is a dangerous or deadly weapon. The majority cannot use Ludwig's speculation that the soft bulge might have contained a weapon to justify his search of the pocket, without converting every frisk into a potential search through any container capable of concealing a tiny weapon. The officer's statutory authority does not stretch that far.[4]

I dissent.

De Muniz and Leeson, JJ., join in this dissenting opinion.

---

[3] The majority attempts to bolster its interpretation of ORS 131.625(2) by citing cases that suppressed the results of searches incident to arrest. The majority fails to cite or distinguish *State v. Roque-Escamilla*, 106 Or App 270, 274, 806 P2d 1173, *rev den* 311 Or 427 (1991), in which we suppressed evidence of the contents of a wallet. The officer searched the wallet incident to arrest "because he was looking for identification and weapons—such as a razor blade." 106 Or App at 272. We held that the officer's concern that the wallet could contain a razor blade furnished no justification to search it.

[4] The parties do not suggest that the search of the pocket and the soft container, and the seizure of the contents of the container, were authorized by any law other than ORS 131.625(2). The argument presented in the concurring opinion of Edmonds, J., was not preserved by the parties below, or briefed in this court. The state argues that the officer's action did not exceed the scope of the actions authorized by ORS 131.625(2). Our answer to that question should not decide whether some other source also authorized the officer's actions.