Argued and submitted November 17, 1993, affirmed October 19, 1994

In the Matter of the Suspension of
the Driving Privileges of

Patrick William JASPER,
*Respondent,*

*v.*

MOTOR VEHICLES DIVISION,
*Appellant.*

(92-2128; CA A77902)

883 P2d 244

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Elizabeth A. Baldwin argued the cause for respondent.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Motor Vehicles Division (MVD) appeals the circuit court's judgment reversing its order suspending petitioner's driving privileges after he refused to submit to a chemical breath test following his arrest for driving under the influence of intoxicants (DUII). MVD argues that the circuit court erred in setting aside the suspension order. We affirm.

We state the facts consistently with the findings of the MVD hearings officer. On June 19, 1992, at around 8:41 p.m., Officer Colistro was told by police dispatch that a named citizen had reported a one vehicle, non-injury accident on 7th Street. The citizen told the police that the vehicle had rolled off the road and that two white male subjects had left the vehicle and walked up 7th Street. The citizen indicated that they might have been intoxicated and that one of them had a beer can in his hand.

Colistro arrived in the area about four minutes after he received the dispatch report. Although he had not driven by the scene of the accident, he saw two white males walking up 7th Street about three blocks from where the accident reportedly occurred. One person had a beer in his hand, and they were the only people walking on the street in that area. Colistro approached the two men and asked them to "hold up," that he wanted to speak with them. After he asked them for identification, the man with the beer can, Langdon, proceeded to pour out the beer and told Colistro that there was no open container because the can was empty. He then threw the beer can down at Colistro's feet. While that was happening, petitioner kept walking down the street. The officer told him to stop and show some identification. Colistro asked both men where the truck was. Langdon said, "Fuck you, we weren't in the truck," and petitioner replied, "Fuck you, arrest me." Petitioner refused to give his name or show any identification. By this time, Colistro noticed that each man had a strong odor of alcohol on his breath. They were staggering, their speech was slurred and their eyes were watery and bloodshot. Neither man was cooperative.

Colistro arrested Langdon for offensive littering and put him in the patrol car. As he did that, petitioner took off running and went behind a nearby building. The officer

chased and caught petitioner and asked him why he ran. Petitioner responded, "Fuck you, am I under arrest?" Colistro told him that he needed to find out what was going on. Petitioner continued to be uncooperative. The officer then handcuffed him and put him in the patrol car of another officer who had arrived at the scene. Petitioner was then transported about three blocks to the scene of the accident. There, Colistro saw a vehicle off the road, in the brush against a tree. Two citizens then arrived at the scene and identified petitioner as the driver of the vehicle. They told Colistro that they had seen petitioner drive up the hill and pull over to the side of the road, apparently because of mechanical problems. They then saw Langdon get out of the vehicle and, as Langdon opened the hood, the vehicle started rolling down the hill and into the brush. They said that they then saw petitioner get out of the vehicle and both men walk up 7th Street.

Colistro then asked petitioner if he had anything to drink since the accident, and petitioner responded, "Fuck you, am I under arrest?" The officer told petitioner that he was not under arrest and, after advising him of his rights, asked petitioner if he would perform field sobriety tests. Petitioner refused, and Colistro arrested him for DUII. ORS 813.010. At the jail, petitioner was informed of the rights and consequences described in ORS 813.130 and was asked to submit to a chemical breath test. Petitioner responded, "Fuck you." Colistro again asked petitioner if he would take the breath test, and again he said, "Fuck you." Colistro told petitioner that he would consider that a refusal to take the test.

After a hearing, MVD issued an order suspending petitioner's driving privileges based on his refusal to submit to a chemical breath test. Petitioner appealed MVD's order to the circuit court pursuant to ORS 813.450. The court reversed and set aside the agency's order on the ground that the officer's handcuffing and transporting of petitioner to the scene of the accident exceeded the permissible scope of the stop and, therefore, the suspension order, based on evidence obtained from the stop, must be vacated. MVD appeals the circuit court's order.

■■    At the outset, we note that our review is of MVD's order, not the circuit court's judgment. *Oviedo v. MVD*, 102

Or App 110, 113, 792 P2d 1244 (1990); *Shakerin v. MVD*, 101 Or App 357, 360, 790 P2d 1180 (1990). Thus, we review for substantial evidence and errors of law. ORS 813.450(4).

Petitioner argued before MVD, and argues here, that Colistro had no basis for the stop[1] and that, even if the initial stop was permissible, he exceeded the proper scope of the stop by handcuffing petitioner, placing him in the patrol car and transporting him to the scene of the accident. According to petitioner, such conduct "transformed the initial stop into a detention requiring probable cause."

Under Oregon's "stop and frisk" law, a peace officer may stop a person and "make a reasonable inquiry," if the officer "reasonably suspects" that the person has committed a crime.[2] ORS 131.615(1). The scope of a stop is limited by ORS 131.615(2), which provides that "[t]he detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time." A restraint that exceeds a lawful stop results in an unlawful arrest, unless it is based on probable cause.[3] *State v. Morgan*, 106 Or App 138, 141, 806 P2d 713, *rev den* 312 Or 235 (1991).

Here, Colistro testified that he stopped petitioner and Langdon because he suspected them of having left the scene of an accident, in violation of the "duties of the driver involved in an accident, and also the passenger [who] witnessed the accident." He also testified that he handcuffed petitioner because petitioner was being uncooperative. Colistro further testified that, at the time he handcuffed and transported petitioner, he was conducting an investigation and had not selected a charge for an arrest. The MVD hearings officer concluded that, at the time that Colistro contacted

---

[1] Because none of the parties dispute this issue, we assume, for purposes of this opinion, that the hearings officer was correct in concluding that a stop occurred when Colistro first contacted petitioner and Langdon.

[2] ORS 131.605(5) defines a stop as a "temporary restraint of a person's liberty by a peace officer."

[3] Because Oregon's stop and frisk law is based in part on *Terry v. Ohio*, 393 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), we interpret the law in a manner consistent with that decision. *State v. Kennedy*, 290 Or 492, 498, 624 P2d 99 (1981). In *Terry*, the Supreme Court first recognized an exception to the requirement that seizures of persons must be based on probable cause; however, the exception was limited to "brief and narrowly circumscribed intrusions." *Dunaway v. New York*, 442 US 200, 212, 99 S Ct 2248, 60 L Ed 2d 824 (1979).

petitioner, he had a reasonable suspicion that petitioner had committed the crime of failure to perform the duties of a driver. ORS 811.700.[4] The hearings officer also concluded that handcuffing petitioner was reasonably necessary to conduct the investigation of the crime for which he was stopped. Finally, the hearings officer concluded that transporting petitioner three blocks to the scene of the accident could reasonably be construed as being in the vicinity of the stop and, thus, Colistro did not exceed the permissible scope of the stop.

■ Even assuming the propriety of the stop and the handcuffing under ORS 131.615(1), we conclude that, under the circumstances, putting the handcuffed petitioner in the patrol car and transporting him three blocks exceeded the permissible scope of the stop, because the detention went beyond the "vicinity of the stop." MVD argues that the "investigation required the officer to transport petitioner" to the accident scene and that that location was in the vicinity of the stop. We disagree on both counts. First, Colistro gave no reason for why he had to take petitioner to the scene of the accident. At the time that he transported petitioner, Colistro did not know or have reason to believe that witnesses who could identify petitioner would be at that location or would soon be arriving there. Further, even if it was necessary for *Colistro* to go to the scene of the accident, there was nothing about the investigation that "required" that petitioner be

---

[4] ORS 811.700(1) provides, in part:

"A person commits the offense of failure to perform the duties of a driver when property is damaged if the person is the driver of any vehicle and the person does not perform duties required under any of the following:

"* * * * *

"(c) If the person is the driver of any vehicle involved in an accident resulting only in damage to fixtures or property legally upon or adjacent to a highway, the person shall do all of the following:

"(A) Take reasonable steps to notify the owner or person in charge of the property of such fact and of the driver's name and address and of the registration number of the vehicle the driver is driving.

"(B) Upon request and if available, exhibit any document issued as official evidence of a grant of driving privileges to the driver."

Under ORS 811.700(1)(c), the driver of the vehicle involved in a one vehicle accident is under no duty to remain at the scene of the accident. Because Colistro knew that he was investigating a one vehicle, non-injury accident, his suspicion that petitioner had violated a duty under ORS 811.700 arguably did not provide grounds for a stop. However, petitioner does not raise that issue, and its resolution is unnecessary to our disposition of the case.

there and, had Colistro left, the other officer was available to stay with petitioner.

Second, and more importantly, an officer's authority under ORS 131.615(2) is limited to making a reasonable inquiry in the *vicinity* of the stop. Here, the scene of the accident was not the same as the scene of the stop. Our assessment of whether the permissible scope of the stop was exceeded must focus on whether the detention and inquiry were conducted in the vicinity of the *stop*, not whether they occurred in the vicinity of an event that provided the grounds for the stop.

MVD argues that transporting petitioner in the patrol car was no more intrusive than detaining him at the scene of the stop while Colistro went to the scene of the accident to continue the investigation. The degree of intrusiveness, however, is immaterial to whether the detention and inquiry were conducted in the vicinity of the stop. Moreover, the propriety of detaining a stopped person at the scene of a stop while the investigation continues elsewhere would likely depend on whether that detention and inquiry were conducted "for no longer than a reasonable time." ORS 131.615(2). As MVD readily admits, "[t]he reasonableness of the length of time of this stop was unchallenged below; the only issue appears to center on the meaning of 'vicinity' * * * and whether it includes a location two or three blocks away from the initial scene of the stop."

We considered a similar issue in *State v. Hasan*, 93 Or App 142, 147, 760 P2d 1377 (1988), in which we held that the scope of a reasonable inquiry included arranging to have the victim, *who was present at the scene*, view the stopped person. We concluded that the officer there conducted the detention and inquiry in the vicinity of the stop, even though the defendant had been moved from the front yard, where the stop occurred, to a police car parked several yards away, where the victim was sitting. Similarly, in *State v. Philpott*, 33 Or App 589, 593, 577 P2d 96 (1978), we held that the detention and inquiry of the defendant outside of a bar was within the vicinity of the stop that occurred in the bar's men's room. Notably, in neither case was the stopped person taken from the general scene of the stop.

Here, in contrast, petitioner was handcuffed, put in the back of a patrol car and driven three blocks away against his will. Those actions are not analogous to walking a short distance from the location of the stop, but remaining at the general scene. Although we appreciate the frustration that an investigating officer must feel when confronted with such obnoxious behavior, we conclude that, under the circumstances here, the detention and inquiry of petitioner were not conducted in the vicinity of the stop and thus exceeded the scope of a lawful stop.

Affirmed.